McClure *v.* Couch *et al.*

(*Nashville,* December Term, 1944.)

Opinion filed June 9, 1945.

Rehearing denied June 30, 1945.

MACK SIMPSON, of Waverly, and WALKER & HOOKER and TYREE B. HARRIS, III, all of Nashville, for complainant.

J. E. TUBB, of Waverly, for defendant Couch.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This cause is here on a petition for *certiorari* filed by the complainant, Jennie B. McClure, as the result of a

decision by the Court of Appeals by which that court reversed the chancellor's conclusion in her favor. The writ has been granted and argument heard.

In her bill the complainant charged that in 1913 a violent avulsion occurred in Duck River in Humphreys County that cut off the west end of her father's farm creating an island of 20 or 30 acres. Her father, H. R. Barnhill, executed a will in 1914 in which he devised to complainant 27 acres of land, which included the 2 or 3 acres on the west end of the property devised and which was then west of the new channel of Duck River. This will was probated after complainant's father died in 1917. The description given in said will was as follows: "Lying and being in the 12th Civil district of Humphreys County, Tenn., beginning on a stake and runs north with H. M. McIllwain's west boundary line 50 poles to a stake; thence west 40 poles to a stake at the foot of the hill; thence southwardly and with the foot of the hill 50 poles to a stake; thence west 192 poles to a stake on the bank of Duck River, thence south with the meanders of said river 12-3/4 poles to a stake; thence east 230 poles to the beginning, containing 27 acres, more or less, the same being the lands which I purchased from S. A. Larkins by deed dated July 28, 1884 . . ."

In the same will H. R. Barnhill devised a long rectangular tract of land to his daughter, Izora Barnhill, which at the time his will was probated extended across the new channel of Duck River created by the avulsion in 1913.

The above 27-acre tract, which Mr. Barnhill willed to his daughter, Jennie B. McClure, was also a long rectangular tract lying immediately south of and adjoining the tract that was willed to Izora Barnhill. This tract also extended across the new channel of Duck River to

the old channel of the river, which included only 2 or 3 acres on the west side of the new channel.

This suit was filed in August, 1942, and the bill stated that since the avulsion in 1913 accretions had become deposited against the south bank of complainant's 2 or 3 acre tract which lay west of the new channel of Duck River and became hers by reason of the law controlling accretions, and that the accretions amounted to 26.9 acres.

Complainant charged that she and her father had claimed, used and controlled said tract of land, including the 26.9 acres of accretions, and that they had been in open, adverse, notorious and continuous possession thereof, using and cultivating the same and paying the taxes thereon for more than twenty years.

Complainant also charged that her title thereto and her possession thereof had not been questioned by any one until the Tennessee Valley Authority undertook to buy a reservoir to be formed by Gilbertsville Dam, which would cause the overflow of said 26.9 acres as well as some other lands belonging to her. She charged that the TVA was negotiating with her for the purchase of the tract of 26.9 acres of accretions when she learned for the first time from the TVA purchasing agent that the defendants, Pearl Couch and W. M. Tolley, claimed that they were entitled to portions of the accretions. Complainant further charged that none of the defendants had ever been in possession of any part of said accretions and had never made any such claims until that time.

Complainant, therefore, filed her bill for the purpose of removing the cloud on the title by reason of the verbal claims made by the defendants, Pearl Couch and W. M. Tolley.

To this bill the defendant, Pearl Couch, filed an answer in which she denied all of the allegations of the complainant which were adverse to her claims. She claimed that she was the owner of said accretions by reason of their having become attached to her farm of 8¾ acres, which farm was on the west side of the old channel of Duck River previous to the avulsion in 1913 and also west of the complainant's property.

None of the other defendants, including W. M. Tolley, filed any pleadings but suffered judgments *pro confesso* to be taken against them. The contest is, therefore, between the complainant, Jennie B. McClure, and the defendant, Pearl Couch.

The defendant, Pearl Couch, received her property by deed from her father and mother, H. A. Link and wife, the deed being dated February 11, 1938. The two tracts were described as follows:

"Tract No. 2: Lying and being situated in the same civil district as the above tract, and in Duck River bottom, and described as follows: Beginning at a stake on the road on the bank of Duck River, and runs thence north 70 degrees west 25 poles on the road; thence south 46½ degrees west 57 poles to a stake; thence due east 25 poles to Duck River; thence up said river with its meanders to the place of beginning containing 8 acres more or less.

"Tract No. 3: Beginning on the dividing line of the above described tracts 2 & 3, as described in the original bill 16 poles due west from Duck River, and runs thence east 16 poles to Duck River; thence down said river with its meanders to a point due south from the point of beginning; thence due north to the beginning, containing about Three-fourths of an acre; said last two tracts being as set aside by D. C. Collier upon a survey made

for that purpose; and the last two tracts above are the same lands conveyed to H. A. Link by deed of date of May 2, 1904, and being the lands sold in the County Court of Humphreys County, Tennessee, in the case of *H. A. Links et al.* v. *Lennie Oliver et al.*, said deed being recorded in Deed Book No. 18, page 270 of the Register's office of Humphreys County, Tennessee.''

The accompanying plat filed as exhibit No. 1 to the deposition of E. C. Collier, former county surveyor of Humphreys County, serves better to acquaint one with the lay of the land as it existed at the time of the trial in this cause.

There were some twenty witnesses who testified. From this testimony the chancellor and the Court of Appeals concurred in finding as a fact that the west end of the land owned by H. R. Barnhill's daughter Izora and the complainant, Jennie B. McClure, was cut off suddenly

by an avulsion in 1913, which left some 2 or 3 acres on the west side of the new channel of Duck River belonging to the complainant.

The chancellor and the Court of Appeals also concurred in finding that after the avulsion in 1913 and up to the time this bill was filed in 1942 that the channel gradually and steadily moved eastwardly and southwardly eroding the east bank of the new channel and depositing accretions on the west and south sides thereof. At the same time the land on the west and south banks of the new channel was being increased by accretions, so that the entire acreage between the old channel and the new channel at the time the present suit was brought was 3.2 acres on the Izora Barnhill tract, 6.4 acres on the complainant's tract, and 26.9 acres south of complainant's original south boundary line. This left the present channel of the river running almost directly east and west from a point 176 feet south of defendant's land for several hundred feet and bears gradually to the north until it runs due north and south and crosses the original tract of land belonging to complainant.

The chancellor and the Court of Appeals further concurred in holding that after the avulsion occurred the northern part of the old channel was filled by sediment, but the southern part of the old channel, going by the defendant's property, was distinct, with a bank 7 to 12 feet high next to the defendant's boundary line on the old channel. At high-water mark the river backs up in this southern portion of the channel and makes a slough. The old river bed is still distinct.

The chancellor and the Court of Appeals further concurred in finding as a fact that the subsequent change in the channel of the river from the southwest corner of complainant's original tract of land on the river to the

present channel of the river was made by erosion and accretion and not by a violent avulsion.

It is, therefore, apparent that the accretions have not been attached to the boundary line of the defendant Couch, but are attached along the whole length of the southern boundary line of the complainant McClure's property and extend down the river therefrom but without touching any body else's property line. No part of the accretions in dispute were formed upon that part of the old river bed which was owned in fee by the defendant Couch.

The Court of Appeals concurred with the chancellor on the finding of fact that an avulsion caused the original change of the channel in 1913, but that thereafter erosions and accretions caused the changes.

But despite this finding, the Court of Appeals held that complainant was the riparian owner or proprietor on the west bank of the old river channel with a shore line of 234 feet. That Court then held that the defendant owned a shore line on the west side of the old channel for a distance of 575 feet. But the Court of Appeals had already held that the new shore line along the south side of complainant's property became the established line, against which bank the accretions had formed. It is, therefore, apparent that the complainant had a new shore line on the new channel of 1,870 feet. However, the Court of Appeals awarded the complainant only the accretions that formed between her original boundaries, to wit, 234 feet. This was error, as the complainant was already the owner of that strip of land and when the deposits formed this additional land was hers by reason of the fact that she already owned that land which was contained in her original boundary of 27 acres.

So, notwithstanding the fact that complainant and her father had taken possession of the accretions on the south, and cultivated portions of them as they formed for more than twenty years, the Court of Appeals found against her and held for the defendant. In addition, complainant had paid the taxes on the accretions for nineteen years, and the taxes had already become a lien in January, 1942, for the twentieth year but would not be set up on the books until November, 1942, following the filing of this suit in August.

The evidence in this cause as found by the chancellor shows conclusively that H. R. Barnhill, who died in 1917, had taken possession of the accretions then formed. Complainant and her husband showed that they took possession in 1917 and continued in possession to the date the suit was filed.

The Court of Appeals held that one George Wiggins began cultivating this land for complainant in 1920, 1921 or 1922 and cultivated it until 1930. But that Court held that the evidence did not show that the land which Wiggins cultivated was the disputed land. This was error, as Wiggins testified that he cultivated the land eight or ten years and quit in 1929. He said that when he began cultivating the land that there were 3, 4 or 5 acres, somewhere along there, and that while he was on the land it got larger. When he quit in 1929 or 1930 there were 8 or 10 acres, although when he started there were only 3 or 5 acres. The record shows by the best evidence that Wiggins cultivated portions of this disputed land, and he established this possession back to 1920 for his own work and testified to the turnip patch that McClure put in, which was in 1914. There is ample evidence that the chancellor reached the correct con-

clusion that the actual adverse possession continued for more than twenty years.

'We are, therefore, of opinion that complainant has maintained legal ownership to the entire 26.9 acres of accretions on the following grounds:

1. She is the legal owner of the 27-acre tract against which the accretions accumulated.

2. She held the major portion of the accretions in adverse possession for more than twenty years.

3. None of the accretions ever touched the property owned by the defendant Couch.

█ The word "accretion" is defined in Webster's New International Dictionary (second edition) to be:

"The increase or extension of the boundaries, or the acquisition, of land by the gradual or imperceptible action of natural forces, as by the washing up of sand or soil from the sea or a river, or by a gradual recession of the water from the usual watermark; accession in which the boundaries of land are enlarged by this process; hence sometimes, improperly, accession in any sense. In accretion the added land belongs to the owner of the land to which it is added; but this is not so in cases of sudden increase, as by an avulsion, or a sudden change of the bed of a stream."

█ In the same edition Mr. Webster defines the word "reliction" as follows:

"A recession of the sea or other water leaving land uncovered; also, the land so left uncovered; dereliction."

█ In this cause the law of accretion applies rather than the law of reliction.

"It is settled law that when grants of land border on running water, and the banks are changed by that gradual process known as 'accretion,' the riparian owner's boundary line still remains the stream, although, during

the years, by this accretion, the actual area of his possessions may vary. In *New Orleans* v. *United States*, 10 Pet. 662, 717, [35 U. S. 662, 9 L. Ed. 573, 594], this court said: 'The question is well settled at common law, that the person whose land is bounded by a stream of water which changes its course gradually by alluvial formations shall still hold by the same boundary, including the accumulated soil. No other rule can be applied on just principles. Every proprietor whose land is thus bounded is subject to loss by the same means which may add to his territory; and, as he is without remedy for his loss in this way, he cannot be held accountable for his gain.' See, also, *Jones* v. *Soulard*, 24 How. 41, [65 U. S. 41, 16 L. Ed. 604]; *Banks* v. *Ogden*, 2 Wall. 57, [69 U. S. 57, 17 L. Ed. 818].; *Saulet* v. *Shepherd*, 4 Wall. 502, [71 U. S. 502, 18 L. Ed. 442]; *St. Clair [County]* v. *Lovingston*, 23 Wall. 46, [90 U. S. 46, 23 L. Ed. 59].; *Jefferis* v. *East Omaha Land Co.*, 134 U. S. 178, 10 S. Ct. 518 [33 L. Ed. 872].

"It is equally well settled that where a stream, which is a boundary, from any cause suddenly abandons its old and seeks a new bed, such change of channel works no change of boundary.; and that the boundary remains as it was, in the center of the old channel, although no water may be flowing therein. This sudden and rapid change of channel is termed, in the law, 'avulsion.' " *State of Nebraska* v. *State of Iowa*, 143 U. S. 359, 360-362, 12 S. Ct. 396, 397, 36 L. Ed. 186, 187-188.

"The complainant may maintain an ejectment suit under the statutes Shannon's Code, sections 4970 and 4972 [Williams Code, Secs. 9118 and 9120], although she is in the actual possession of the property as it is not necessary that the defendant be in actual possession but he may be made a defendant on the ground of his naked

574

adverse claim. See Shannon's Code, section 4972, Note 3 [Williams Code, Sec. 9120, Note 3].; *H. N. Thompson et al.* v. *Claire B. Newman, Madison County Equity,* Opinion rendered by Judge Faw at Jackson, February 28, 1924." *Scruggs* v. *Baugh,* 3 Tenn. App. 256, 261.

In the case of *Stockley* v. *Cissna,* 119 Tenn. 135, 164, 104 S. W. 792, 800, this Court quoted approvingly from Judge Lurton's opinion in *Stockley* v. *Cissna,* 6 Cir., 119 F. 812, 56 C. C. A. 324, as follows:

"Before the plaintiff can recover the new-formed land on the margin of the solid land composing Island 37, he must be able to establish his ownership of the bank against which the accretion has formed. Until he does this he has no shadow of claim as riparian proprietor. The right of accretion depends upon the contiguity of the claimant's estate to the river."

In that case it was held that if an avulsion leaves property and boundary lines undisturbed, then the property and boundary lines remain exactly at the point at which they were when the avulsion took place.

The proof shows that the old river had a hardpan bottom and that the east bank was 8 or 10 feet high. We are unable to see how Mrs. Couch could successfully insist upon the law of accretions when her line only went to the middle of the old stream. There is proof that the island was first formed on the western part of the 27-acre tract owned by Mrs. McClure and gradually increased in size to the south until the made land amounted to the 26.9 acres in controversy.

Again, H. A. Link died in 1938, but on February 11, 1938, before his death, he and his wife deeded to the defendant, Pearl Couch, the 8¾ acres with the same description as included in his own deed when he bought the property in 1904. Although this large acreage of ac-

cretions had accumulated, he made no reference in the deed to Pearl Couch of any extra acreage.

It is, therefore, evident that Link only claimed and intended to convey title to 8¾ acres. The record also discloses that in 1926 Link, or his representative, placed three iron stakes in the middle of the old river bed, which would indicate that he only claimed 8¾ acres, and so by the actions of her predecessor in title Pearl Couch is estopped from claiming these accretions.

In 1920 or 1921, when this island to the north had increased by accretions, it was rented to George Wiggins, who cultivated it until 1930. In 1931 complainant rented it to Dave Forrester and his son, the father dying in 1936, and the son continuing to cultivate the land until the bill was filed herein. All of this was done under rental contracts with the complainant, and the taxes were paid by the complainant on the formed land for the twenty-year period. Each year as additional land was added and became productive the new land was cleared for cultivation. In this way the tillable portions of said tract have gradually been increased. There was no one else who had possession of said land or maintained any claim therefor. Complainant consistently and adversely maintained her possession and claimed the ownership.

It was said in *Stearns Coal & Lumber Co.* v. *Patton,* 134 Tenn. 556, 574, 184 S. W. 855, 860:

"The true owner, in legal contemplation, is in constructive possession of his unoccupied land if no one else is holding adversely. He does not have to maintain actual possession to assert his rights."

We are, therefore, of opinion that the complainant has established by the proof that she has exercised ownership over the land in question adversely for a period

of more than twenty years, that she has paid the taxes on the land for all this adverse holding period, and that under the law of accretions the land accreted to her land rather than to the land of Mrs. Couch. We find that the record discloses by facts hereinbefore set out that Mr. Link recognized the ownership of the land by Mrs. McClure during his lifetime.

It results that the decree of the Court of Appeals will be reversed and that of the chancellor affirmed.