# HAYNES v. MORTON.—222 S. W. (2d) 389.

Jackson.   Opinion filed March 2, 1949.

Petition for Certiorari denied by Supreme Court, July 9, 1949.

252

Robert L. Taylor and Chas. C. Crabtree, both of Memphis, for plaintiff-in-error.

Burch, Porter & Johnson, and Bailey Brown, of Memphis, for defendant-in-error.

SWEPSTON, J. This is an appeal in error by the plaintiff below from the action of the trial court in directing a verdict in favor of defendant at the close of all the proof.

The declaration was in two counts. The first count is for damages for breach of contract whereby it is alleged that defendant contracted with plaintiff to sell him a certain lot and to construct thereon a house according to plans and specifications and certain representations and to landscape the property. The second count is for damages for the unauthorized and wrongful felling and removal of two valuable trees on said lot several months after the purchase by plaintiff and for leaving the stumps as an unattractive nuisance.

Defendant pleads not guilty, non assumpsit, nil debet and specially;

That defendant did enter into a written contract for the sale of the property but denies that he contracted orally on any of the matters alleged, but that such oral agreements, if any, are void under the statute of frauds;

That any prior oral agreements were merged in the subsequent written agreement, of which profert was made;

That pursuant to said written agreement a deed was delivered to and accepted by plaintiff, that he took possession under same, which amounted to an accord and satisfaction of any claims plaintiff might have.

Under proper assignments of error we are called on to determine whether, viewing the evidence and all proper inferences therefrom in the light favorable to plaintiff, there was any material issue of fact to be submitted to the jury.

There was evidence tending to show that plaintiff and his wife went to the field office of the Sherwood Forest

Subdivision which was being developed by defendant, where they were referred to a real estate agent, Douglass. That he told them to pick out the lot and style of house they wanted. That he referred·them to some completed houses on Park Avenue in the subdivision. That after selecting one of those houses as to type they were shown the plans and specifications on that type by Douglass. That he stated that their house would be an exact duplicate of the one on Park Avenue they had selected. That that place had a concrete ramp across the gutter connecting the driveway with the street. That Douglass made no statement about the driveway otherwise, but plaintiff assumed there would be a concrete ramp. That Douglass did say that the house would be built of "top-notch" and "A-Number 1" material. Douglass then had them sign a written contract.

The only material parts of that contract are:

"Lot No. 4, Sherwood Forest Subdivision and upon which is being erected a five room, brick bungalow known as 897 Robin Hood Lane, together with all improvements thereon.

"It is understood that when house has passed final F. H. A. inspection it is to be accepted by Purchaser.

"This contract is contingent upon the purchaser being able to qualify for F. H. A. and G. I. loan, otherwise contract is to be cancelled and money refunded.

"Possession of premises to be given closing of trade."

The consideration was $9700.00. The contract was a "Uniform real estate sale contract and was signed by plaintiff and defendant with the agent Douglass acknowledging receipt of the earnest money. The date of execution was July 19, 1946. At this time there was on the lot only a concrete block foundation.

That Douglass then arranged for the financing of the purchase for them with Leader Federal Savings & Loan Association, which was the regular, though not the exclusive, financial institution of this subdivision under F. H. A. insured mortgages.

There is in the record a deed to plaintiff dated December 10, 1946, but it was not acknowledged until February 3, 1947 and was filed for record the next day. The evidence tends to show that this was the day of actual closing of the trade and the giving of possession. That the house and grounds had not been fully completed and landscaped and the driveway had not been built, but the house could be moved into.

That plaintiff was badly in need of possession, and that he was permitted to move in and did so. That before the F. H. A. had accepted the house and before they moved in they inquired of Douglass about the driveway not being laid and at the time they were moving in they told Douglass about the driveway and other things that had not been done properly and he assured them they would all be taken care of later but they were trying to get everybody moved into the houses. That before signing the closing papers they asked the F. H. A. why it had accepted the place when several things had not been done and they were told they would be done later. That defendant made an effort to remedy these complaints but failed to do so.

There is in evidence the F. H. A. commitment to Leader Federal showing that the Subdivision requirements made by the State Director must be complied with and specifically to ". . . remove curb and lay concrete ramp and change gravel drive to rock asphalt and chirt. Planting and landscaping cost to be increased to $125.00."

There is evidence to show that the following items are incomplete or defective and have not been remedied.

"No lock on garage door; The windows and door did not fit; The screens were never fixed properly; There was no concrete driveway nor any ramp for the drive over the ditch; The floors were inferior in quality and not properly finished; The lot was inadequately landscaped; The yard was not cleared of rubbish; The floors were not properly cleaned."

That plaintiff was not given a copy of the plans and specifications after seeing same and defendant did have them but failed to produce them at the trial after being called on to produce.

There is evidence as to the amount of the damage on account of some of these items but not on all.

All of the foregoing relates to the first count of the declaration. The second count will be discussed later.

At the close of all the evidence the defendant renewed his motion that all evidence of verbal agreements relating to the condition of the house and "the changing or completion of conditions of the house" incident to the sale be stricken as being in violation of the statute of frauds.

The Court ruled:

1. That if all the evidence both oral and written be taken together, the contract would rest in parol and further if supported by the same consideration, it would be indivisible, hence unenforceable under the statute of frauds.

2. That if viewed as divisible contracts only the written contract was supported by a consideration, the purchase price.

3. That promises to fix or remedy certain defects about the property made after the deed and delivery of possession were not supported by a consideration.

4. That the rule of caveat emptor would apply because the plaintiff saw the defects when title and possession passed to him.

Plaintiff has assigned error covering these rulings and the peremptory instruction in favor of defendant.

█ Counsel have filed excellent briefs which have been of substantial aid to the Court. It is apparent from an examination of them that the fundamental difference between them and the meat of the case depend upon whether the entire transaction falls under the statute of frauds or whether the agreement about the construction of the improvements or the lot was collateral and an inducement to the contract for the sale of the lot. We think that all of the evidence shows that the agreement of the plaintiff to purchase the lot was induced by an agreement that defendant would construct a residence and other improvements on the lot; that this latter agreement was collateral to the contract for the sale of the lot; that the written contract does not purport to cover the entire agreement as to the construction of improvements, because the writing merely refers to the fact that a five room brick veneer bungalow is to be built and makes no reference to the plan, kind and quality of materials other than brick, the garage, the driveway, the landscape work, etc., nor to the existing plans and specifications which were admittedly already prepared along with a dozen other plans and specifications by and for the use of defendant in selling his lots, so as to give a purchaser his choice of several plans.

This case is ruled by two cases particularly apposite in point of fact as well as law. One cited in plaintiff's brief is Betts v. Demumbrune, 3 Tenn. 39. The other is found under Sec. 3142 (St. of Frauds) Note 14, of Thomp-

son's Shannon's Code.  Brumley v. Miller, 2 Shan. Cas. 454.

The annotation by General Thompson is as follows:

"Where a contract required by the statute of frauds to be in writing is in writing, an independent collateral agreement with reference to the same subject matter may be in parol where the statute of frauds does not require it to be in writing."  (Citing that case and Lewis v. Turnley, 97 Tenn. 197, 36 S. W. 872, allowing parol evidence to prove vendor's contract to transfer insurance policies upon the improvements upon the land.)

.Also:

"So, where the contract of sale of land is evidenced by a title bond which does not contain the terms of the collateral contract by which the vendor undertook to do certain work on the mill on the land, and to put it in a certain good condition by a fixed day, this collateral contract may be proved by parol testimony."  Citing the Brumley case.

In the same case, the Court said:

"It is further shown that, although the mill seems to have been delivered to Brumley, yet it was not considered as finally accepted by him, the defendant having additional work to do on the race to complete their agreement, and that they continued to work on it until sometime in August."  (delivery of mill was in May).

Although that was a rescission case, the Court said that the alternative remedy could have been an abatement to the extent of the damages.

The other case, Betts v. Demumbrune, involved a written lease and a collateral promise in parol by lessor to build a kitchen on the premises.  There lessor was permitted to prove the parol collateral agreement and it was

held that the consideration for the parol agreement to build the kitchen was the contract of lease of the land.

In Hines v. Willcox, 96 Tenn. 148, p. 153, et seq., 33 S. W. 914, 34 L. R. A. 824, 54 Am. St. Rep. 823, there is a full statement of the parol evidence rule and the several exceptions to it with citation and abstract of numerous Tennessee cases, repetition of which is here not necessary. Also in McGannon v. Farrell, 141 Tenn. 631, 637, 214 S. W. 432.

■ The parol evidence rule does not apply where the parol evidence in no way contradicts or alters the terms of the written contract, but tends to establish an independent or collateral agreement not in conflict with it.

■ Nor, among other exceptions, when the representations and statements are made as an inducement to the contract, and form the basis or consideration of it.

■ The application of the foregoing rules to the evidence offered in the instant case is clear. The proof tends to show and it is for the jury to determine among other things whether under the circumstances the plaintiff accepted the residence finally, or with the understanding of the parties that the deficiencies in the performance would be remedied later by defendant.

Plaintiff became the owner of the equitable title on July 9, 1946. Irvine v. Muse, 57 Tenn. 477.

■ He could not then have been aware of defendant's alleged breach of the collateral agreement to construct the improvements. When he went into possession and took the legal title the deficiencies were observable. He offered evidence that he called defendant's attention to them and that defendant recognized his obligation to correct them. Therefore, the promise made then and later needs no further consideration than the original one to support it.

Yet it is urged by defendant that the provisions of the contract are merged in the deed when it was accepted by the purchaser, citing Smith v. Tucker, 151 Tenn. 347, 270 S. W. 66, 41 A. L. R. 830.

As will be shown later, this case has no application to the instant cause of action.

In 55 Am. Jur. 737, Sec. 328, it is said:

"The rule that the acceptance of a deed tendered in the performance of a contract to convey land merges or extinguishes the covenants and stipulations contained in the contract does not apply to those provisions of the antecedent contract which the parties do not intend to be incorporated in the deed, or which are not necessarily performed or satisfied by the execution and delivery of the stipulated conveyance. Proof of matters collateral to the deed which are not merged therein is not a violation of and is not excluded by the rule excluding extrinsic evidence to vary or contradict a deed of conveyance. Conveyances are frequently made in execution of agreements which the conveyances themselves do not show or attempt to show; and although no parol evidence would be admissible to change the legal effect of the conveyances themselves, it may be admitted to show on what consideration they were made, and to show the whole transaction, where the conveyances constitute only a part. . . ."

For this last is cited Caughron v. Stinespring, 132 Tenn. 636, 179 S. W. 152, L. R. A. 1916C, 403, wherein it was permitted to be shown by parol the number of acres and the price per acre called for by the contract, where the deed was silent on both and the suit was for a deficiency in acreage.

See also Section 373 of the same text.

While it appears in the statement of facts in Smith v. Tucker, supra, that when the contract to purchase the house and lot was signed the vendor promised orally to complete any minor details and to remedy any unsatisfactory conditions, yet the suit was not for breach of contract but was ex delicto for the alleged negligence of the vendor whereby a stone mantel fell and killed a child of the vendee.

151 Tenn. on page 362, 270 S. W. on page 70, 41 A. L. R. 830, the Court significantly said:

"Whatever may be the reason, no case can be found in the books where the vendor has been held liable in damages to the vendee, or to third persons, for personal injuries arising from defects in the premises."

Yet the books are replete with cases where either rescission of the contract or damages for the breach by the vendor to put improvements on the property has been awarded the purchaser, for the simple reason that such damages are within the contemplation of the parties and the rule of caveat emptor has no application to the very benefits expressly contracted for by the purchaser.

In addition to the above authorities, see McMillan v. American Suburban Corporation, 136 Tenn. 53, 188 S. W. 615, L. R. A. 1917B, 401. Land was sold on the installment plan with a bond for title which contained a guaranty that vendor would lay water mains and sewers in the subdivision. Purchaser paid in full, accepted a deed from which was omitted the guaranty, and went into possession without the guaranty having been fulfilled. Held, that rescission being within the discretion of the court would not here be allowed, but the vendee would be remitted to his legal remedy for damages for the breach.

■ We are, therefore, of opinion that the trial court was in error in directing a verdict on the first count.

The second count of the declaration arises out of this factual situation.

On July 17, 1947 the defendant gave to the municipal electric power company a written permit to cut the trees on the rear of this Lot No. 4. The contract to sell to plaintiff was made two days later, but no mention of this permit appears in the contract and there is evidence that plaintiff had no knowledge of same at any time until August when the trees were felled.

In the deed, however, is this language: "Subject to any existing easements".

It is immaterial whether we call the permit an easement; it was a right to go on the land and was in the nature of an easement. The language in the deed is an attempted reservation of that right.

■ The rule is that the exception or reservation must be described with definiteness and certainty just as much so as must be the property granted. 16 Am. Jur. 618, Sec. 315.

Otherwise the grantee has the benefit of the defect in the description and takes title unaffected. Kobbe v. Harriman Land Co., 139 Tenn. 251, 201 S. W. 762.

Here the exclusion clause was:

"In all about 52,100 acres, more or less and excluding older and better titles—including those tracts already deeded by said Wilkin as my attorney."

There was such a deed as mentioned but it was unrecorded and the subsequent grantee had no actual notice of it. Held, the grantee was not required to investigate for conveyances unrecorded and of which he had no actual knowledge.

We, therefore, hold that the trial court was in error in directing a verdict on the second count.

Reverse and remand for a new trial. Defendant-in-error will pay the costs of the appeal.

Anderson, P. J., and Waldrop, Sp. J., concur.