RUSSELL *et al. v.* BROWN.

*(Nashville,* December Term, 1952.)

Opinion filed July 17, 1953.

THOMAS R. PRICE, of Memphis, and (CANADA, RUSSELL, TURNER & ALEXANDER, of Memphis, of counsel), for appellants.

CLARENCE CLIFTON and JOHN B. MACK, both of Memphis (CLIFTON & MACK, of Memphis, of counsel), for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This is a suit to quiet title and involves the construction of a deed. The complainants filed with their bill as Exhibit "A" thereto the original deed of the complainants to the defendant, appellee. The bill was demurred to. The question thus squarely presented is that this deed conveys the land to the defendant which is claimed in the bill to have been excepted therefrom. The Chancellor sustained the demurrer and dismissed the bill. The effect of the Chancellor's decree is to hold that the land in question passed with the deed of the complainants to the defendant, appellee. The complainants excepted to this holding of the Chancellor, and have seasonably perfected their appeal. Counsel for both sides have filed excellent briefs, made good arguments and we now have the matter for determination.

Complainants common ancestor, K. R. Armistead, through whom they claim title, was in 1913 the owner of a tract of land located in Shelby County, Tennessee, which

fronted on the East bank of the Mississippi River. This property was acquired by Mr. Armistead during the years of 1903 through 1911, by four separate conveyances. The deeds to him described the property by metes and bounds. There was no intervening ownership between these tracts, and the property after these purchases lies contiguous and can now be treated as a unit.

For a number of years prior to 1913 accretions had been forming on the Western portion of said tract of land as the River moved in a Westerly direction away from said property.

In the year 1913 there occurred an avulsion of said River with result that the River suddenly changed its course and cut a new channel "through the aforedescribed property and accretions thereto of K. R. Armistead, leaving a portion of said lands which had been theretofore built up by the process of accretion lying and situated on the West side of said River, but still in Shelby County, Tennessee."

The tract of land now in question was obviously originally very small in size because it had largely been accumulated by accretions over a comparatively few years, but by virtue of time the accretions to it now contain approximately 990 acres of woodland and approximately 1205 acres of sandbar. This is the tract of land in question, that is, the 990 acres of woodland and the 1205 acres of sandbar.

The complainants derived title to all of said property from K. R. Armistead who died in 1927. In 1949 these complainants by warranty deed conveyed to the defendant, Guy I. Brown, the original tracts of land owned by K. R. Armistead. The deed in part says that the parties convey "the following described real estate, situated and being in the County of Shelby, State of Tennessee, to-wit: The

K. R. Armistead Estate 1646 acres, more or less, lying in Sections 8, 9, 10, 16 and 17. Township 1, Range 10 West, Chickasaw Cession, Shelby County, Tennessee, more particularly described as follows:'' Then follows the four descriptions as taken from the deeds through which Mr. Armistead acquired this property. In the deed in the instant case to Parcel I, the following language appears before the description:

"All the remaining property conveyed to K. R. Armistead in warranty deed of record in Book 480, page 165,————.''

In Parcel II, in the deed the language is:

"The remaining part of the property conveyed to Armistead by warranty deed of record in Book 324, page 74,————''.

Parcel III, contains this language:

"The remaining part of the property conveyed to K. R. Armistead by deed of record in Book 480, page 408,————.''

And, Parcel IV, contains this language:

"All that remaining part of the property conveyed to K. R. Armistead by quit claim deed of record in the Register's Office of Shelby County, Tennessee, in Book 488, page 584, which property is conveyed in this conveyance herein by quit claim only, not further or otherwise, being more particularly described as:''

Then at the end of the descriptions, which were the identical descriptions in the deeds to Armistead in the first instance, the following paragraph appears:

"Parties of the first part do hereby specifically except from the above descriptions any portions thereof lost by relictions but does also specifically convey and include all additions to the foregoing described property that have been acquired by accre-

tions, it being further understood that it is the intention of the parties of the first part and is so intended by this instrument, to convey any and all real estate that they own in the general location of the above described property that is contiguous thereto whether same is specifically and adequately described herein or not and also whether said property so included is located in the County of Shelby State of Tennessee, or in the County of DeSoto, State of Mississippi."

Of course in the construction of this deed "the intention of the instrument is the guide to be followed; and that intention is 'to be arrived at from the language of the instrument read in the light of the surrounding circumstances.'" *Manhattan Savings Bank & Trust Co.* v. *Bedford,* 161 Tenn. 187, 30 S. W. (2d) 227, 229.

The contention of the appellants is that the conveyance to the appellee herein conveyed only 1646 acres of land on the East bank of the River and that by so conveying this number of acres on the East bank there could not have been any intention on the part of the grantors to convey the acreage lying on the West bank of the River which is now larger than the acreage lying on the East bank of the River. They contend as apparently do the appellees that the word "relictions" used in the exception to the deed above quoted was inadvertently used and means "erosion". When we look to the true definition of "relictions" it is very easy to see how the draftsman of the deed could have known what he was doing and used the word "relictions" advisedly. In *Warren* v. *Chambers,* 25 Ark. 120, 91 Am. Dec. 538, 4 Am. Rep. 23, that court very aptly and correctly defined the term as follows:

"Dereliction, according to the same authority, is a recession of the waters of the sea, a navigable river, or other stream, by which land that was before

covered with water is left dry. In such case, if the alteration takes place suddenly and sensibly, the ownership remains according to former bounds; but if it is made gradually and imperceptibly, the derelict or dry land belongs to the riparian owner from whose shore or bank the water has so receded.''

Thus it might readily be seen that by excepting from the conveyance any "relictions" of the land the draftsman did not desire the complainants to warrant the exact amount of the land because some of it by "relictions" are "derelictions", if such had happened in a gradual and imperceptible manner it would belong to others than Mr. Armistead. It would thus seem that the language used is applicable.

It is likewise very forcibly argued that the purpose of the clause above quoted following the description of the property, that in using the word "contiguous" the draftsman and the grantors in the deed meant by this term the accretions to the land on the East bank of the River after the avulsion in 1913, because it was necessary to construe the word "contiguous" to mean that the land should touch or border and this language plainly meant to exclude the land on the West bank of the River.

We do not think that such a reservation is a valid reservation. Ordinarily a reservation in a deed conveying real property must describe the property reserved to the grantors with as much definiteness and certainty as the land conveyed; otherwise it is void and the grantee takes title to the entire property described. *Harrison* v. *Beaty,* 24 Tenn. App. 13, 137 S. W. (2d) 946, 951; *Haynes* v. *Morton,* 32 Tenn. App. 251, 262, 222 S. W. (2d) 389, 394.

It seems to us, and we so hold, that when the appellants, the grantors in the deed, conveyed "the K. R. Armistead estate * * *" which was to "include all addi-

tions to the foregoing described property that had been acquired by accretions, * * * ", and then in between the description to the property as Mr. Armistead had acquired it in 1903, that it was their intention to convey in gross and not by acres the entire estate of Mr. Armistead as described plus what the accretions of the River had added thereto prior to the avulsion of 1913 and the accretions added to what was left on the West bank of the River up to the time of the conveyance in 1949. A recognized definition of "accretion" is:

"The increase or extension of the boundaries, or the acquisition, of land by the gradual or imperceptible action of natural forces, as by the washing up of sand or soil from the sea or a river, or by a gradual recession of the water from the usual watermark; accession in which the boundaries of land are enlarged by this process; hence sometimes, improperly, accession in any sense. In accretion the added land belongs to the owner of the land to which it is added; but this is not so in cases of sudden increase, as by an avulsion, or a sudden change of the bed of a stream." Webster's New International Dictionary.

We, in *McClure* v. *Couch*, 182 Tenn. 563, 564, at page 573, 188 S. W. (2d) 550, at page 554, adopted and quoted with approval as the law of this State from the Supreme Court of the United States, *State of Nebraska* v. *State of Iowa*, 143 U. S. 359, 360-362, 12 S. Ct. 396, 397, 36 L. Ed. 186, 187-188, the following:

"It is equally well settled that where a stream, which is a boundary, from any cause suddenly abandons its old and seeks a new bed, such change of channel works no change of boundary; and that the boundary remains as it was, in the center of the old channel, although no water may be flowing therein. This

sudden and rapid change of channel is termed, in the law, 'avulsion.' ''

So it is thus seen that the avulsion of 1913 did not affect the title to the property of Mr. K. R. Armistead who owned the lands on both sides of the new channel of the Mississippi River as well as the land under the River (after the avulsion) subject only to the easement of navigation in the public. *State of Tennessee* v. *Muncie Pulp Co.*, 119 Tenn. 47, 130, 104 S. W. 437. It seems to us that the complainants have conveyed in their deed to the appellees all the property they received from K. R. Armistead. This clearly seems their intention. After the avulsion and accretions to that part cut off on the West bank of the Mississippi River the title was still in K. R. Armistead and when these parties conveyed his estate and described it as above with all the accretions etc., it seems to us that they clearly intended to convey all that they had in that general location of the K. R. Armistead property.

The only reservation that we can find in the deed is that of ''relictions'' which, as we have above indicated is clearly possible and a proper reservation. There is no other reservation set out and no described property is reserved. In a technical and legal sense the accretions or property West of the River and that on the East is contiguous because the Armisteads owned under the bottom of the River after the avulsion, *State of Tennessee* v. *Muncie,* supra, though in an ordinary sense it would not be contiguous. We as did an English Court recently, *Spillers, Ld.* v. *Cardiff Assessment Committee,* [1931], 2 King's Bench, 21, 42 said:

''as to the proper meaning of the word 'contiguous' there can, we think, be no doubt. Dr. Johnson, of whom it may probably be said that he employed the English language with a more anxious precision

than any other man that ever lived, defines 'contiguous' in his dictionary thus: 'meeting so as to touch; bordering upon each other; not separate,' and he gives no other definition.''

We conclude that ordinarily the word ''contiguous'' should be given this meaning and it would be the meaning accepted by the ordinary man on the street. This deed though seems to have been drawn with some particularity and shows evidence of having been drafted by a lawyer. Since the definition of the word ''relictions'', as above set out, may be so aptly used as used therein we can well see that in using the word ''contiguous'' it was also used in a strict, technical and legal sense because the lands did touch and border even though under the River.

We were asked in the oral argument by the appellants, that if we reached the conclusion which we have reached above, that we remand the case so that the bill might be amended and additional relief sought. We think that this request comes entirely too late and is a request which should have properly been made to the Chancellor upon his sustaining the demurrer below. For the reasons above stated the decree of the Chancellor must be affirmed.