380 P.2d 998

**STATE of Arizona, Appellee,**

v.

**C. B. JACOBS, Appellant.**

No. 1264.

Supreme Court of Arizona.

En Banc.

April 17, 1963.

Rehearing Denied May 14, 1963.

Ingraham, Dennis & Jones, and James S. Tegart, Yuma, for appellant.

Robert W. Pickrell, Atty. Gen., David M. Lurie and Stirley Newell, Asst. Attys. Gen., for appellee.

UDALL, Vice Chief Justice.

This is an appeal from a judgment and sentence on charges of rape, kidnapping, and robbery. The facts, as they relate to the offenses charged, are these: On the morning of May 24, 1961, the prosecuting witness was sleeping on a screened porch adjacent to her house trailer home. She and her two daughters, aged 2 and 4 years, had returned to sleep after her husband and son left the home about 4:30 a. m. At about 7:30 or 8:00 a. m. she was awakened by the voice of the defendant at the door of the screened porch asking for a drink of water. She told him to go to the back of the trailer house where there was a faucet outside. She then went into the

bathroom of the trailer house and started to dress. Before she could remove her nightgown the defendant appeared at the bathroom door, drew a knife and demanded that she give him her money. When the prosecutrix replied that she had only some small change, the defendant stated he would have to kill her. He questioned her about her husband's whereabouts, his occupation, and when he would return home, and continued to demand that she give him money.

The prosecutrix pleaded with him not to kill her or her children. The defendant then indicated that he desired to have sexual intercourse with her. He forced her at knife point to go out to the screened porch where they found the children huddled in the middle of the bed. He then forced her back through the trailer house and out the back door to a cabana where, against her will, an act of sexual intercourse was accomplished.

The defendant then stated again that he would have to kill the prosecutrix, who pleaded with him and offered him her sewing machine and vacuum cleaner. She gave him 27 cents change that was lying on an ironing board on the screened porch and then remembered that she had taken approximately a dollar in change from her son's trousers and left it on a bench near her washer outside the trailer house. She gave this money to the defendant. The defendant continued to threaten her and

she gave him a transistor radio, telling him he could sell it for $20.00.

Finally, after terrorizing the prosecutrix for thirty or forty-five minutes, the defendant left. He was apprehended between the scene of the crime and Yuma later that morning. At the time of his arrest he had in his possession a knife identified by the prosecutrix as the one displayed at her home, the transistor radio, and $1.85 in change.

Several of the defendant's assignments of error challenge the jurisdiction of the trial court to try him on these charges. It is the defendant's position that the prosecution failed to prove the crimes were committed within the boundaries of the State of Arizona.

■ The offenses charged occurred near the left bank of Haughtelin Lake on an area known as "the Island", northeast of Yuma, Arizona. Prior to 1920 the main channel of the Colorado River flowed through what is now Haughtelin Lake. At that time the location where these offenses occurred was on the left bank of the Colorado as it flowed in its meandering channel toward the sea, and was therefore within the State of Arizona, Ariz. Const. Art. 1, § 1, A.R.S. In 1920, within a period of time described by a witness as "just a few minutes" the Colorado River altered its course to the east, forming and flowing through what is now the main channel of

the river in that area. By reason of this change, the location where these offenses occurred is on the right bank of the present main channel of the Colorado River. The defendant contends there is a presumption that this location is within the State of California, and that this presumption was not overcome by the evidence presented at the trial. This contention rests upon the argument that changes in the courses of rivers are presumed to occur by accretion and not by avulsion, Kitteridge v. Ritter, 172 Iowa 55, 151 N.W. 1097 (1915). Without deciding whether there is indeed presumption to this effect in the law, we are of the opinion that the evidence presented in this case was sufficient to rebut such a presumption, and to establish as a fact that the change in the river's course occurred by avulsion and not by accretion.

The undisputed evidence was that prior to 1920 the location in question was on the left bank of the river, and that although the main channel of the river meandered in that vicinity, the location was never under water. In 1920, within a period to be measured in minutes the river changed its course and cut for itself a new channel several miles east of the former channel. The water remaining in the old channel formed Haughtelin Lake, a body of water presently supplied by ground water flow. Although a witness testified that once, during a period of high water, there was a flow of current through Haughtelin Lake,

there was no testimony that the main channel of the Colorado ever returned to its former course through the lake.

Accretion is the gradual, imperceptible addition to land forming the banks of a stream by the deposit of waterborne solids or by the gradual recession of water which exposes previously submerged terrain, Conran v. Girven, 341 S.W.2d 75 (Mo.1960); Conkey v. Knudsen, 141 Neb. 517, 4 N.W.2d 290 (1942); Nephi Irr. Co. v. Bailey, 111 Utah 402, 181 P.2d 215 (1947); McClure v. Couch, 182 Tenn. 563, 188 S.W.2d 550 (1945). Where, however, as in this case, the stream changes its course suddenly or in such a manner as not to destroy the identity of the land between the old and new channels, the change is termed an avulsion. Brown v. Wilson, 348 Mo. 658, 155 S.W.2d 176 (1941); Wyatt v. Wycough, 232 Ark. 760, 341 S.W.2d 18 (1960); Hirt v. Entus, 37 Wash.2d 418, 224 P.2d 620 (1950).

In boundary disputes between states, as in those between riparian owners, the rule is established that where a stream which forms a boundary line suddenly leaves its old bed and forms a new one, by the process of avulsion, there is no alteration of the boundary line. The boundary remains in the middle of the former stream channel, although no water may be flowing in it, Arkansas v. Tennessee, 246 U.S. 158, 38 S.Ct. 301, 62 L.Ed. 638 (1917); Nebraska

v. Iowa, 143 U.S. 359, 12 S.Ct. 396, 36 L. Ed. 186 (1892). Subsequent changes in the course of the river as it flows through the new channel do not affect the boundary line, Arkansas v. Tennessee, supra, so long as the river does not return to its former course and again flow along the boundary.

The trial court did not err in deciding that the uncontradicted evidence established the territorial jurisdiction of the courts of this state over the location where the offenses were committed. Because there was no issue of fact in the question of jurisdiction, the defendant's contention that the jury should have been instructed on a presumption that the location is within California is without merit. Likewise, the court did not err in denying defendant's motion to quash and the other motions made during the course of the trial in challenge to the jurisdiction of the court.

The remaining assignments of error relate to the judgment of guilty and the sentence given on the charge of kidnapping with intent to rape. The defendant makes three arguments with respect to this charge. First, he contends that the crime of kidnapping with intent to rape cannot be charged under A.R.S. § 13–492, subd. A.[1] because this crime is governed by A.R.S. § 13–492, subd. B.[2] and may only be committed against a child under the age of 14 years. Second, he contends that the jury did not find him guilty of the crime charged, kidnapping *with intent to rape,* but only of kidnapping, therefore the penalty provided for the crime charged cannot lawfully be imposed. Third, he contends that the evidence does not sustain a finding of guilty of kidnapping.

In State v. Taylor, 82 Ariz. 289, 312 P.2d 162 (1957) we answered the argument that A.R.S. § 13–492, subd. A applies only to kidnapping with intent to obtain pecuniary gain. The crime charged in the Taylor case was kidnapping with the intent to commit assault. Although the events upon which the charge was based took place before the enactment of what is now A.R.S. § 13–492, subd. B, the argument was made

1. A.R.S. § 13–492, subd. A.: "A person, except in the case of a minor by the parent, who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains such individual for ransom, reward or otherwise, or to commit extortion or robbery, or to exact from relatives of such person or from any other person any money or valuable thing, or a person who aids or abets any such conduct, is guilty of a felony."

2. A.R.S. § 13–492, subd. B.: "A person, except in the case of a minor by the parent, who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any child under the age of fourteen years by any means whatsoever with intent to hold or detain, or who holds or detains such child for the purpose of raping or committing sodomy, or lewd or lascivious acts upon the person of such child, or a person who aids or abets any such conduct, is guilty of a felony."

in the Taylor appeal, as in this, that the enactment of subsection B disclosed a legislative intent that subsection A apply only to kidnapping for pecuniary gain. If kidnapping for the purpose of sexual assault against persons of any age can be punished under A.R.S. § 13–492, subd. A, there would, of course, have been no purpose in the enactment of A.R.S. § 13–492, subd. B. In rejecting this argument we pointed out the legislative history of § 13–492, subd. A which demonstrates its close kinship to the federal "Lindbergh Law." We held that the words "or otherwise" in the clause describing the types of specific intent which fall within the statute made that clause broad enough to include the intent to commit sexual assault, citing the federal cases to show the broad application of the similarly worded Lindbergh Law. We stated:

"[T]he 1956 amendment [which added § 13–492, subd. B] is not persuasive to indicate the legislative intent for the reason that a patently erroneous view of the status of the law by the legislature need not be followed." 82 Ariz. at 293, 312 P.2d at 165.

We therefore now hold that the crime of kidnapping with intent to commit rape may be charged under A.R.S. § 13–492, subd. A.

The jury returned a verdict of "guilty of kidnapping" and the defendant argues that this verdict is insufficient to permit the imposition of sentence under § 13–492, because there was no finding of the specific intent required by that section. In State v. Lubetkin, 78 Ariz. 91, 276 P.2d 520 (1954) a similar argument was raised and rejected. There the verdict was "guilty of drawing on insufficient account" instead of "guilty of drawing on insufficient account with knowledge thereof with intent to defraud" as the appellant contended it should have been. The verdict in the present case, as was true in Lubetkin, is a general verdict, and would have been entirely sufficient if it had been simply "guilty". But for greater convenience, in a case where three charges are submitted to the jury, it is appropriate to differentiate the three verdicts by a description of the crime to which each verdict relates. The addition of words describing unmistakably the crime charged by the information, even though the description is not as apt as a careful lawyer might use, does not invalidate the verdict, State v. Lubetkin, supra; Holder v. State, 31 Ariz. 357, 253 P. 629, 630 (1927); Tate v. State, 56 Ariz. 194, 106 P.2d 487 (1940).

The defendant argues that the evidence does not sustain a charge of kidnapping for the reason that the acts shown by the evidence occurred within a small area in and around the home of the prosecuting witness. It has been held, however, that it is the fact of forcible removal, not

the distance involved, that establishes the crime of kidnapping, People v. Chessman, 38 Cal.2d 166, 238 P.2d 1001 (1952); People v. Wein, 50 Cal.2d 383, 326 P.2d 457 (1958). In the Chessman case the victim was forced to move 22 feet, from one car to another. In the Wein case, the victims were forced to move distances ranging from a few feet to 50 feet, within their own homes.

Convictions in these cases were established under Cal.Penal Code § 209, which states:

"Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever * * *."

The corresponding portion of the definition of kidnapping in A.R.S. § 13–492, subd. A is essentially the same as that of the California statute:

"A person, except in the case of a minor by the parent, who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever * * *."

We have concluded that the evidence which shows that the defendant forced his victim at knife point from the bathroom of the trailer house out to the screened-in porch and then back through the trailer and out a back door onto the cabana where the rape occurred sufficiently supports the finding of guilty of kidnapping under this section.

Nor do we find merit in the defendant's argument that he is being punished twice for the same act. The crime of kidnapping preceded and was complete before the rape took place. The component elements of the two crimes are distinct and separate. Cf. State v. Hutton, 87 Ariz. 176, 349 P.2d 187 (1960).

There was no error and the judgment and sentence appealed from are affirmed.

BERNSTEIN, C. J., and STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., concur.