474 P.2d 821

**STATE of Arizona, Appellee,**

**v.**

**Edward PADILLA and Earl Padilla, Appellants.**

**No. 2008.**

Supreme Court of Arizona, In Banc.

Oct. 1, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

William A. Harrell, Phoenix, for appellants.

HAYS, Justice.

Edward and Earl Padilla were charged with assault with intent to commit rape

and kidnapping. The trial judge directed a verdict for Earl on the first charge but the jury found him guilty of kidnapping. Edward was convicted of both crimes. From their convictions they have appealed.

The facts adduced at trial indicate that on April 19, 1968, at approximately 12:30 a. m., Debra, age 15, left her home following an argument between her parents. At the same time, the appellants and Harry Armstrong were preparing to leave a bar where they had been drinking and playing pool for several hours. As Debra walked past the bar, a man leaving the bar said something to her. She ignored him and continued on her way. As she became aware of a shadow of a person behind her, Edward Padilla touched her on the shoulder. Scared, she hit him and tried to run. Edward threw his arm around her neck and a struggle ensued. Meanwhile, Armstrong had left the bar and was approaching his car, a two door sedan. Earl Padilla, who was already seated in the car, told him to hurry because his brother, Edward, was in trouble. Armstrong drove the car to the area where the struggle was taking place and Earl, who was riding in the front passenger seat, got out of the car, pulled his backrest forward and helped Edward force the victim into the back seat. Edward got in the back seat and Earl returned to the front passenger seat. Armstrong, realizing what was happening, got out of the driver's seat, pulled his backrest forward, pulled Debra out of the car and told her to run. Debra ran until she met some policemen who thereupon arrested Edward and Earl Padilla. Harry Armstrong was not charged.

Armstrong testified that when he drove up to the spot where Edward Padilla was struggling to hold Debra, who was screaming he heard Edward say: "Shut up, I'll kill you." After the defendants shoved the victim into the back seat of his car, he ordered them to release her. However, Edward continued to restrain her with his arm around her neck. After Armstrong pulled the victim free, Edward got out of the car, grabbed Armstrong by his shirt and said: "You shouldn't cross me, man, I was going to seduce that girl." Edward then threatened to kill Armstrong but he was able to break loose and flee.

Jacqueline Murphy, a manager of the bar, testified that earlier in the evening Earl Padilla told her: "I love you, I love you." She told him that he apparently had her confused with someone else but he said: "No, I love you." "I'm going to get you."

The appellants first contend that the admission into evidence of their statements went against the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and that the trial court therefore erred in denying their motions for severance. In *Bruton*, a postal inspector testified that Evans, Bruton's codefendant who did not take the stand, orally confessed that he and Bruton committed the crime charged. The confession was secured during the interrogation of Evans by the inspector. Although the jury was instructed to disregard the confession with respect to Bruton because as to him it was hearsay, the U. S. Supreme Court reversed Bruton's conviction because the introduction of such statements, where the declarant failed to testify, denied Bruton his right to confront a witness against him.

Unlike *Bruton*, the statements in this case were not formal confessions nor were they made to or in the presence of a government agent. The words were uttered before, during and immediately after the crimes charged and neither defendant said anything which directly inferred any wrongdoing by his co-defendant. Although the statements of each defendant clearly referred only to the mental processes of the declarant, the court instructed the jury that the statements of one could not be considered against the other. Further, it is doubtful that the statements of Edward Padilla, "Shut up, I'll kill you" and "You shouldn't cross me, man, I was going to seduce that girl," could have operated to the prejudice of Earl Padilla since the trial judge acquitted him of the charge of as-

sault with intent to commit rape before the jury retired. Although Earl was convicted of kidnapping, the possibility that Edward's statements had a material bearing, if any, on the jury's determination of that charge is remote. Earl's statements, "I love you, I love you" and "I'm going to get you" could not have affected Edward's case and there was no prejudice resulting therefrom. The rule of *Bruton*, supra, did not require the suppression of the statements of either defendant and the motions for severance were properly denied.

■ The appellants next argue that the evidence is insufficient to sustain their convictions for kidnapping because the evidence indicates that their victim was moved only a few feet between the time she was attacked to the time she managed to escape. However, the evidence is plainly sufficient to reasonably support the conclusion that both appellants exercised force to shove their unwilling victim into Armstrong's car and that she was restrained in the car until Armstrong could free her. In State v. Jacobs, 93 Ariz. 336, 380 P.2d 998 (1963), we held that it is the fact of forcible removal and not the distance involved that establishes the crime of kidnapping. *Jacobs* cited with approval the holding of the California Supreme Court in People v. Chessman, 38 Cal.2d 166, 238 P.2d 1001 (1952). Although *Chessman* has been recently overruled by People v. Daniels, Cal., 80 Cal.Rptr. 897, 459 P.2d 225 (1969), we adhere to the view that the holding in *Chessman* was correct. Thus, *Jacobs* continues to be the law of Arizona and since the facts clearly support a kidnapping conviction within the rule of that case, we find no error here.

■ Appellant Earl Padilla makes the point that since the trial court directed a verdict of acquittal of the charge of assault with intent to commit rape, the court was thereby bound to direct a verdict of acquittal of the kidnapping because a kidnapping always includes an assault. We find this argument to be without merit. The acquittal of assault with intent to commit rape, a crime requiring proof of specific intent, does not necessarily mean that the evidence was insufficient for the jury to find an act of assault with general intent. The evidence was clearly sufficient to support a finding that Earl Padilla assaulted the victim.

■ Appellant Edward Padilla contends that the trial court erred by admitting his incriminating statements into evidence before independent evidence· established the corpus delicti of assault with intent to commit rape. The victim testified that at approximately 12:30 a. m., Edward Padilla, a stranger to her, approached her from behind and touched her shoulder. When she hit him and tried to escape, he threw his arm around her neck and held her against her will although she made every effort to break his grip. When Armstrong's car appeared, Earl Padilla got out and helped Edward shove her into the back seat. Edward got in the back seat with her and continued to restrain her by physical force although she continued to struggle violently. Armstrong had to literally "pull" her out of the vehicle.

The victim further testified that she was screaming hysterically throughout the entire episode. Considering the time these events took place, the fact that Edward Padilla was a stranger to the victim and all of the other circumstances of this testimony, it appears obvious that the corpus delicti of the crime charged here was established by sufficient evidence before the jury was permitted to consider the incriminating statements. The testimony of the victim, fully corroborated by Armstrong, is sufficient to warrant a reasonable inference that this victim was assaulted for the purpose of rape.

■ It is finally contended that Edward Padilla was denied effective assistance of counsel because his attorney was faced with a conflict of interest. Appellant makes the point that his attorney could not argue that appellant's brother, Earl, who made an admission, may have been guilty but that appellant was innocent or that a mistake in identification had been made be-

cause his brother was his identical twin and it was his brother who was guilty, because his counsel would thereby be implicating his other client. While this is true, we are of the opinion that if the appellants had separate attorneys, each of whom pursued this line of argument, the jury would not have been influenced thereby. The statement made by Earl clearly referred only to his own state of mind and cannot be considered as damaging to Edward against whom overwhelming evidence had already been presented. Armstrong, who knew both appellants and who was with them for several hours up to the time of the offenses, positively identified Edward Padilla as the brother who first attacked the victim on the street and Earl as the one who helped Edward shove her into the back seat of his car.

The appellant has failed to make a showing sufficient to convince this court that a conflict of interest existed by virtue of which his cause was prejudiced. State v. Pickard, 105 Ariz. 219, 462 P.2d 87 (1969).

The judgments of the trial court are affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concur.