DEMPSEY H. MARKS

*v.*

SOUTHERN TRUST COMPANY et al.

(*Nashville,* December Term, 1957.)

Opinion filed February 6, 1958.

ALEXANDER W. CORTNER, Clarksville, for appellants.

DANIEL & HARVILL, Clarksville, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

We have an *inter vivos,* irrevocable trust conveyance dated January 16, 1928, for interpretation. (A copy of the trust is attached to this opinion as Appendix A. )

At the date of execution of this trust instrument the trustor had one son Albert S. Marks who died on February 13, 1943. The trustor or settlor died on July 5, 1930, at which time she left this one son. This son is survived by his widow, the defendant herein, and four children, Arthur H. Marks, Dempsey H. Marks, Albert S. Marks, III, and Mary E. Marks (now Mary M. Powers). These children have had issue born to them which are the great-grandchildren of the settlor, and all are living.

The first child not named in the trust instrument, Mary M. Powers was born February 19, 1928, or 34 days after the date of execution of the instrument in question. Louise Hunter Marks, the wife of Albert S. Marks and the mother of these children was 35 years of age at the time of the execution of this instrument.

On May 1, 1928, the settlor or trustor established another separate trust for Mary E. Marks alone of $10,000 with the same trust company as trustee. The value of the real estate conveyed in the trust instrument at the time of the making of the trust instrument was $60,000.

The trust instrument was prepared by one of the top-flight lawyers of the Nashville Bar.

The trustor or settlor made her will which was dated September 2, 1929, and was probated in July after her death. In this will she left all of her personal property to her son Albert Marks for life and then "it was to be turned over to a good trust company which shall divide the income equally", among her "grandsons", the same ones that are named in the trust instrument "as long as

they shall live''. There is no provision in the will for the girl, her granddaughter.

The suit was filed for a construction of this instrument and to have a partition in kind of the property as provided in the instrument. The contention obviously is that Mary M. Powers (Mary Marks) is supposed to share equally with her three brothers under this trust according to its provisions. The counter to this contention is the contention that the three brothers being named alone, especially in the *habendum* clause, are the only ones intended to share in this trust instrument. The contention is likewise made that the separate trust for Mary was another reason to show the intention of the settlor that she was not to share in this trust.

We have read the excellent briefs filed by both sides herein, several times, as well as the record. We have likewise made a rather extensive independent investigation of the authorities. Obviously the question is not easy, but after several days of thoughtful consideration we have arrived at the conclusion that the Chancellor was correct in his determination hereof.

The able Chancellor concluded that the determination of the questions here involved depended on the proper answer to two questions, namely:

''[1] Did Mrs. Mary H. Gholson, the Trustor, intend for all of the children of Albert S. Marks to comprise a class of beneficiaries under the trust; and

''[2] Will the inclusion of Mary M. Powers, a child of Albert S. Marks, born after the execution of said trust, but who was a child *en ventre sa mere* at the time of execution, as one of the beneficiaries of the class

referred to as the children of Albert S. Marks, violate the Rule against Perpetuities?''

■ We first have the problem to determine the true and proper construction and intent of the settlor of this instrument just as if there were no such thing as the rule against perpetuities, and then after we have made up our minds and reached a proper construction of this instrument to apply the rule of perpetuities rigorously, in complete disregard of the intention of the settlor. We say this because the rule against perpetuities is not a rule of construction, but is a pre-emptory demand of the law. *Crockett v. Scott,* 199 Tenn. 90, 284 S.W.2d 289, 56 A.L.R.2d 442. It is not a test to determine intention; its object is to defeat intention. Gray on Perpetuities, Second Edition, Section 629.

■ Instruments of the kind here in question are to be construed and interpreted generally as are contracts, deeds, or wills. 90 C.J.S. Trusts sec. 161 c, p. 19.

■ Of course the important thing in the construction of the trust instrument is to determine the intention of the settlor as evidenced by all the provisions of the instrument, giving no portion any greater emphasis than any other. *Russell v. Brown,* 195 Tenn. 482, 260 S.W.2d 257; *Hutchison v. Board,* 194 Tenn. 223, 250 S.W.2d 82, and others. In determining this intention we cannot follow any hard and fast rule but each case must be considered on its own bottom. The peculiar facts and circumstances and so forth, are considered to determine what is this intention. It is not necessarily so much the language that is used by the settlor as it is his or her evident intention which governs.

■ One clause in the instrument which might be in conflict with another clause will not necessarily prevail over the other unless there is an evident and clear intention on the part of the maker that one clause should prevail over the other. We have of course for very obvious reasons long since abolished all technical rules of construction which were used at common law because it was felt that in construing these instruments that the intention of the maker was the primary purpose to be considered.

Having these various rules in mind the able Chancellor interpreted and found as the meaning of this instrument as follows:

"Paragraph 1 of the deed of trust stated the Trustor's intention to convey certain realty 'in trust so that I, my son, his wife and children, may always have a home and a support that can not be taken for debts and can not be disposed of during the continuance of this trust, except as herein provided.'

"The first paragraph of Article 3 states that upon the death of the Trustor's son and wife, the income, rents and profits from said property shall 'go for life to the children then living of my said son, Albert S. Marks, equally, share and share alike, and to the descendants *per stirpes,* of any that may be dead.' It is apparent that the use of the words 'children then living' designates a class of individuals the identity of each member thereof not being determinable until the death of Trustor's son and his wife. Should Defendant, Mary M. Powers, survive her mother she would be a child 'then living', and would be entitled to receive

the rents and profits equally with the other children of the said Albert S. Marks for the course of her natural life or until the trust was terminated as provided in Article 6 of the agreement.

"In the second paragraph of Article 3 the Trustor authorized her son, Albert S. Marks, after her death, to divide or partition the land among his children 'so that each of his said children may know what part he or she may receive and go upon and improve his or her portion during the life of either or both of said parents.' At the time of the execution of the trust agreement, all of the children of Albert S. Marks were boys, but both Mr. and Mrs. Marks were relatively young people, and it was evident that additional children would be born unto them. The sex of such unborn children naturally could not be determined at the time of the execution of the agreement.

"In the fifth paragraph of Article 4 the Trustor attempted to give the children of said Albert S. Marks power to dispose of their respective interest in the property by will, provided that 'none of my said grandchildren shall have the right to will or devise his or her share, or any interest therein, to any other than a direct descendant of myself.' Again we see the significant use of the words 'his or her' when referring to the children of Albert S. Marks who were to be the beneficiaries of the Trustor's bounty.

"The fact that Trustor named Dempsey H. Marks, Arthur H. Marks and Albert S. Marks, III, in the *habendum* paragraph, and by later reference in Article 6 of the trust agreement is of no significance in the

determination of the individuals comprising the class who would be entitled to share in the trust estate after the death of the trustor, Mr. Marks and Mrs. Marks. These parties were alive at the time the deed of trust was executed, and served only to define the term or duration of the trust to prevent violation of the Rule against Perpetuities. On the other hand, on each occasion that a reference is made to those who take an interest in the trust estate, such reference is made to the children of Albert S. Marks, living at the time such interest appears.

"Likewise, the fact that a separate trust instrument was executed for the benefit of Mary M. Powers, which did not include the other children of Albert S. Marks, does not preclude the conclusion that Mary M. Powers was intended to benefit from the first trust, just as any other afterborn child of Albert S. Marks and Mrs. Louise Hunter Marks would have benefited. The court is of the opinion that if the Trustor had intended to have had the second trust agreement for the benefit of Mary M. Powers to make her equal with the other children, even though it would not do so when monetary values are considered, she would certainly have made a statement to that effect in the second trust instrument. Following the same reasoning, if the Trustor had intended that only the three named beneficiaries were to take the benefits of the first trust instrument to the exclusion of any other children of Albert S. Marks, she would have so stated.

"Thus, the answer to the first question is that Mrs. Mary H. Gholson, the Trustor, intended for all of the

children of Albert S. Marks to comprise the class of beneficiaries under the trust.''

■■ We think that the Chancellor has arrived at the right conclusion as to what was the intention of the trustor. It is apparent to us, as it was to him, that the purpose of the trust instrument was stated in the first paragraph to be to provide a home for her son and his wife and their children free from any debts or obligations. Taking all into consideration this in itself states the purpose of the instrument and it will not be cut down by other clauses or phrases in the various sections of the instrument. We adopt the language of the able Chancellor in his finding on the answer of the first question as that of ours.

The second proposition is not without its problems. The Chancellor was of the opinion that the inclusion of Mary Marks Powers as a beneficiary did not involve the duration of the trust. We have discussed the rule against perpetuities many times by published opinions in this State and most of these reported cases are referred to in the last case of *Crockett v. Scott,* 199 Tenn. 90, 284 S.W.2d 289, 56 A.L.R.2d 442. We will not here again attempt to go into the various ramifications and reasons for the rule against perpetuities but will try to confine the discussion to the principles applicable to the present situation.

■■ In the first place Mary Marks Powers was a child *en ventre sa mere* at the time of the execution of this trust instrument. She was born alive 34 days thereafter and was alive at the time of the settlor's death and was alive at the time this lawsuit was submitted to the Chancellor. Under such a state of facts she,

"is deemed to be a person in being for the purposes both of the vesting of the estate or interest in him, and of being a life chosen to form the perpetuity period. The perpetuity period may, therefore, be apparently extended by a period or periods for gestation, but only in those cases where gestation actually exists." 22 Hallsberrys Laws of England, Paragraph 641, page 302.

See also 41 Am.Jur., p. 62, Sec. 16, where it is stated that this is the rule. What we have just quoted above is the common law and the common law rule against perpetuities is applicable in this State.

■ ■ We have determined heretofore that the gift in this instrument before us was to a class, that is the children of Albert S. Marks or the grandchildren of the settlor. The general rule is that if it is void as to any member or members of the class it is void as to all. See authorities *supra*, as well as 41 Am.Jur., p. 96, Sec. 52, and the reasons therefor as well as a discussion of the class question in *Crockett v. Scott, supra*. We, like the Supreme Court of Washington, in *Betchard v. Iverson*, 1949, 35 Wash.2d 344, 212 P.2d 783, 787, cannot see why a settlor or testator does not have the power to cut off the class when he or she deems fit. As was said in the Washington case just referred to:

"Ordinarily, under these circumstances the maximum membership of the class would be determined upon her death. But that is not the only time at which the class can be closed. We know of no principle of law or reported case which holds that a testator who wills a class gift which includes the after-born cannot

shorten the period during which the class can increase. The mere fact that he bequeaths to a class does not require him to leave the class open and subject to increase in membership until it is physically impossible for the class to so further increase.''

The Washington Court then discusses authority from New Jersey and arrived at the conclusion that a settlor or testator may cut off a class when he or she deems proper.

■ Of course this is brought about by reason of the fact that if we did not have a stop gap in this trust instrument then by letting him treat the children of Albert Marks as any child that they might have then the rule against perpetuities would be violated and the instrument being void as to one of these after-born children would be void as to all, but here the draftsman of this instrument, being an able lawyer, took care of this situation when he provided that it was,

"distinctly understood, that this trust shall not continue longer than the life or lives of the beneficiaries hereinbefore mentioned; that is myself, my said son, his said wife, and their said three children and twenty-one years thereafter.''

Clearly this 21-year limitation that was put in this instrument would cut out and limit the class to those that were born within the period that could come in the 21 years. In other words anyone born that would not do so they would not share. It is about the same proposition as having named this little girl who was born 34 days after this instrument was executed. She was then a person in being and by the use of this 21-year phrase as a limitation

any others are absolutely cut off; the class is stopped and therefore it does not violate the rule against perpetuities.

In a very similar situation though not as well worded as the one herein which we have just above quoted, the Washington Court applied that rule and said this:

"A prudent testator, desirous of avoiding the consequences of creating a remote future interest, may close the class at any time he may see fit. And that is precisely what has been done by testator in the case at bar. In an excess of caution he provided, as to the after-born children of his daughter, that the distribution of the principal 'payable to any such child or children * * * must be made by my trustee twenty-one years after the date of my death.' The plain import of this provision is that only those children born within twenty-one years of testator's death shall share in the trust. He has left nothing to chance, but has stated definitely and positively that the class will close and the maximum membership be ascertained, on the twenty-first anniversary of his death."

Regardless of what we call it or how we classify it under this instrument the classic definition of Gray's Rule against Perpetuity is complied with. That rule is:

"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."

Clearly this does so vest.

What we have just said above is further substantiated in 70 C.J.S. Perpetuities sec. 16, p. 595 *et seq.*, and

cases cited under the notes thereto, especially under note 44. We have read many of these cases and the principle here adopted is the same.

We therefore conclude that the Chancellor was correct in his reasoning and conclusions herein and that his decree should in all things.be affirmed.

## Appendix A

"I, Mary H. Gholson, of Clarksville, Tennessee, own a tract of land, hereinafter described, which I desire to place in trust so that I, my son, his wife, and his children may always have a home and a support that cannot be taken for debts and cannot be disposed of during the continuance of this trust, except as herein provided.

"Now, Therefore, in consideration of the premises and Five ($5.00) Dollars to me paid, I have this day sold and hereby transfer and convey, under the conditions and limitation and for the uses and purposes herein set out, to the Southern Trust Company of Clarksville, Tennessee, as Trustee, my farm in District 15 of Montgomery County, Tennessee, known as the Wilson bottom, and the adjacent hill land owned by me, which is generally bounded as follows: On the north by the lands of Melvin Hunter, Albert S. Marks and J. W. Rinehart, on the east by the lands of said Marks, J. A. Holt and Irv Johnson, on the south by the lands of Mrs. John Holt and Mrs. Corinne Williams, and on the west by Cumberland River, containing by estimation some 700 or 800 acres, more or less.

"To Have And To Hold said property to the said Southern Trust Company, *it* successor or successors in

214

trust, for the uses and purposes, and subject to the limitations herein contained, and for and during my life, the life of my son, Albert S. Marks, for the life of his wife, Mrs. Louise Hunter Marks, for the life of their children, Arthur H. Marks, Dempsey Hunter Marks and Albert S. Marks, Jr., and for twenty-one (21) years thereafter; the said Trustee holding only a legal title to said property while the beneficial interest therein and thereto shall go as herein provided.

"First: I hereby reserve for myself a home upon said property at any time that I may see fit to make a home thereon, and for as long as I may live, should I so elect, and I also especially reserve all the income, rents and profits from said property for my life, should I see fit to take and use the same, and a failure to take or use said income, rents and profits for any period or periods, shall not be deemed a waiver of my so taking and using them at any time or times thereafter.

"Second: At my death it is my desire, and I hereby direct and provide, that all the income, rents and profits of every kind and character, from said land, shall go to my said son, Albert S. Marks, and to his wife, Mrs. Louise Hunter Marks, so long as they both live and to the survivor so long as he or she may live, and the same to be a home for them and their children while said children are under the age of twenty-one (21) years, and thereafter, should it be agreeable to my said son and his wife for said children or any of them to make it their home. Should my said daughter-in-law Mrs. Louise Hunter Marks, marry again, then it is my wish that she shall no longer be entitled to receive any of the income, rents and profits from said property, my idea being that should

she again marry, that it will be the duty and pleasure of her second husband to support her.

"Third: I hereby direct and provide that upon the death of both my said son and his wife, or should she marry again, that all the income, rents and profits from said property, shall go for life to the children then living of my said son, Albert S. Marks, equally, share and share alike, and to the descendants *per stirpes,* of any that may be dead.

"I hereby empower and authorize my said son, Albert S. Marks, after my death, to divide and partition the said land by written instrument during his life or by will to be effective at his death equally among his said children, and to the descendants *per stirpes,* of any that may be dead, so that each of his said children may know what part he or she may receive, and go upon and improve his or her portion during the life of either or both of said parents. This, however, is left to the discretion of my said son, should he see fit to make such division, and does not take from him the right to receive the income, rents and profits from all of said land during his life, should he see fit to take them.

"In the event of such division being made by my son and it shall thereafter appear desirable and advisable to make a sale of a part or all of said land, then with the approval of my said son, during his life and with the consent and approval of the child, children or descendants of children to whom such land to be sold and conveyed has been allotted as provided herein; a part of all of the said land may be sold and the proceeds held and invested by the Trustee as provided herein, as to a sale

during my life. After the death of my son the approval of the Chancery Court of Montgomery County shall be substituted for that of my said son in the event of any sale.

"Fourth: During my life and while my said son is living, and with the consent and approval of said Trustee, we, myself, my said son and said Trustee, shall have the right, which is hereby reserved, to sell and dispose of all or a portion of said land by our joint deed, in which event, it shall be the duty of the said Trustee to reinvest the proceeds of said sale in other property, either real or personal, which shall be held by said Trustee under the terms and limitations herein provided for the property hereby conveyed.

"After my death, said land or any portion thereof may be conveyed in like manner during the life of my said son, if approved by said Trustee, by the joint deed of my said son, my said Trustee and a majority of his children then living. In the event of a sale as here provided, the proceeds from said sale shall be likewise taken and invested by said Trustee as hereinbefore provided where a sale should be made during my life.

"After my death and the death of my son any part or all of the said land may be sold by the Trustee named herein, with the approval of a majority of the children or the representatives of children deceased of my son, Albert S. Marks, and also with the approval of the Chancery Court of Montgomery County, Tennessee. In the event of such sale the proceeds shall be held and invested by the Trustee in the same manner as provided herein where a sale is made during my life.

"It is hereby expressly provided that no sale in any other manner shall be made of said property or any portion thereof during the term of this trust. It is further expressly provided that none of the beneficiaries hereunder shall ever have the right to mortgage or encumber said property, or his or her share thereof, nor shall any interest that any beneficiary may have therein or in the income, rents and profits therefrom, shall ever be liable for any debts, contracts, or obligations of any kind of character; nor shall any beneficiary have the right to sell, mortgage or dispose of, by way of anticipation or otherwise, more than his or her share in one year's income, rents and profits therefrom.

"Power is hereby given to my grandchildren, the children of the said Albert S. Marks, to dispose of their respective interests in said property by will, should they elect so to do, provided that in such disposition by will none of my said grandchildren shall have the right to will or devise his or her share, or any interest therein, to any other than a direct descendent of myself.

"Fifth: Should any of my said grandchildren die, without a descendant or descendants surviving, and without having made a valid devise thereof under the power herein given, then the share that would have come to such grandchild or grandchildren shall revert to and become the property of my surviving grandchildren, as well as to the descendants or descendant, *per stirpes,* of any that may be dead, and the same to be held under all the conditions and limitations as their interest or interests already held by them under this trust.

218

"Sixth: As heretofore stated, it is hereby provided and distinctly understood, that this trust shall not continue longer than the life or lives of the beneficiaries herein-before mentioned; that is myself, my said son, his said wife, and their said three children, and twenty-one (21) years thereafter.

"Seventh: During the continuance of this trust, I hereby direct that the annual taxes shall be promptly paid and not be permitted to become delinquent and that my said son and the said Trustee, by agreement, determine what buildings located on said land shall be kept insured and that the costs thereof, as well as the annual taxes, shall be a first lien upon the income, rents and profits from said property. Should a loss by fire occur, the insurance collected shall be used in rebuilding or otherwise improving said land. It shall be the duty of said Trustee to see that the annual taxes are promptly paid out of the annual income from said property.

"Eighth: Should oil, gas or other mineral be at any time found upon said land, the net receipts therefrom shall be taken and held by said Trustee as principal and have it invested in other land, or in securities of undoubted solvency, such investments to be made under the direction of my said son during his life and by the Trustee along after his death, and held under the same terms, conditions and limitations and for the same uses and purposes as the land herein conveyed.

"Ninth: I waive the execution of any bond by said Trustee unless and until it shall receive the proceeds of a sale or sales of said land and then only in the event it shall be decided that such proceeds are to be invested

otherwise than in other land, in which event reasonable bond will be required of the Trustee acting hereunder.

"I further direct that the said Trustee shall not be liable hereunder except for the wilful violation of its duties as herein prescribed, or upon its failure to faithfully accounts for and pay over any sum or sums received by it. It is expected that while nominal services are required by the Trustee it will only receive nominal compensation, but in its handling of any fund or funds, the usual compensation will be paid to it.

"Should any disagreement arise between said Trustee and any beneficiary hereunder over compensation or otherwise, the same shall be left to the decision of the County and Probate Judge of Montgomery County, Tennessee.

"In Testimony Whereof I have hereunto affixed my signature on the 16 day of January, 1928.

"/s/ Mary H. Gholson"