# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **JOHN J. WOLFE,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Madison Law NO. C-94-088 |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **FIRST AMERICAN CORPORATION, d/b/a** | ) | Appeal No.  02A01-9510-CV-00212 |
| **FIRST AMERICAN TRUST COMPANY OF** | ) | |
| **JACKSON, TENNESSEE** | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

**FILED**

**June 20, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE

THE HONORABLE WHIT S. LAFON,  JUDGE

For the Plaintiff/Appellant:          For the Defendant/Appellee:

Carl I. Jacobson                      William C. Bell, Jr.
Memphis, Tennessee                    Jackson, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

# OPINION

In this case, the plaintiff asserted that the defendant trust company distributed trust funds in violation of the conditions set forth in the trust instrument. The trial court found no trust violation, and we affirm.

Aqua Yacht Harbor Marina Limited Partnership ("Aqua Yacht") planned to locate a marina in Tishomingo County, Mississippi, and lease yacht slips. however, Aqua Yacht did not yet own the land on which the marina was to be situated. It sought to enter into agreements to lease the yacht slips prior to acquiring the land. To safeguard the monies received for the leases prior to Aqua Yacht's acquisition of the land, Aqua Yacht entered into a Trust Agreement ("Trust") with Appellee First American Trust Company of Jackson, Tennessee ("FATC"). The Trust provided that lessee funds received for the lease of slips would be placed in trust and would be distributed only upon the following conditions:

> A.    To Lessor [Aqua Yacht], when Lessor delivers to Trustee [FATC] a certified copy of a Warranty Deed showing title to certain real property in Tishomingo County, Mississippi ("Real Property") whereby Lessor shall have sufficient power in accordance with applicable law to deliver Leases to Lessees, on or before June 2, 1994, and when Lessor delivers to Trustee a fully executed Lease in the format of the "Lease" attached hereto as Exhibit "B", or

> B.    To each Lessee, from whom Lessor received a contribution, if a certified copy of a Warranty Deed for the Real Property is not delivered to the Trustee on or before June 2, 1994, and a fully executed Lease Agreement in the form of the "Lease" attached hereto as Exhibit "B" is not delivered to the Trustee before June 2, 1994 .

Thus, the Trust stated that lessee funds were to be distributed to Aqua Yacht when Aqua Yacht delivered to FATC a warranty deed for the real property. Aqua Yacht offered long-term, ninety-nine-year leases to prospective lessees. The lease contracts provided that the leases would not become binding as long-term leases until the Trust provisions had been complied with. The provisions of the Contract for Lease included the following:

> 3.    This Closing is effective as of this date, with the following contingencies:

> (a)    As of the date hereof, Lessor [Aqua Yacht] has a right of possession coupled with an option to purchase the property on which the Slip lies, such option exercisable by Lessor at any time on or prior to June 1, 1994. Consequently, the Lease Agreement shall not be effective as a long-term lease until the requirements of paragraph 4(b) (1) below are met.

> * * * *

> 4.    (a)    Upon execution of the Lease and payment of the sum set forth in paragraph 2 above, the Net Lease Price . . . shall be placed with the Aqua Yacht Harbor Marina Limited Partnership in an interest bearing trust account at First

American National Bank of Jackson, Tennessee, subject to the terms and conditions of a Trust Agreement with said Trust Company. . . .

(b) The Funds . . . shall not be released from trust until the first to occur of the following events:

(1) Lessor exercises the option referred to in paragraph 3(a) above, in which event he shall deliver to Trustee a fully executed Lease Agreement identifying the Slip leased by Lessee and specified herein, in the format of the "Lease" which is attached as Exhibit 1 to the Offering Plan issued by Lessor; or

(2) June 2, 1994 arrives without exercise of the option (paragraph 3(a)) and the Lease, as described in the preceding paragraph, is therefore not delivered by Lessor to Trustee.

Thus, the lease contracts provided that they became binding as long-term leases only if Aqua Yacht delivered to FATC the executed leases and a warranty deed for the real property on which the marina was located on or before June 1, 1994. FATC would then distribute the trust funds to Aqua Yacht.

On May 1, 1990, Appellant John Wolfe ("Wolfe") signed a lease and lease contract with Aqua Yacht, agreeing to pay $100,000 for a ninety-nine-year lease on a slip. On the same day, Wolfe also signed a Guaranteed Right of Resale with Aqua Yacht. This document gave Wolfe the option to require Aqua Yacht to buy back the yacht slip under certain conditions, on or before January 10, 1994. Although the Guaranteed Right of Resale referred specifically to the Trust, it was not referenced in the Trust, the Contract for Lease, or the Lease. Therefore, FATC was not a party to any agreement that referenced Wolfe's Guaranteed Right of Resale.

In sum, the contracts involved are:

1. The Trust (between Aqua Yacht and FATC) - Prior to Aqua Yacht acquiring the land on which the marina was situated, monies from the lease of yacht slips were placed in trust. When Aqua Yacht delivered to FATC a warranty deed for the land, demonstrating it had authority to provide long term leases, FATC could then release to Aqua Yacht the lease monies held in trust.

2. Lease Contract (between Aqua Yacht and Wolfe) - Prior to Aqua Yacht acquiring the land on which the marina was situated, the lease for the boat slip would not be long-term and the lease monies would be placed in trust under the Trust. If Aqua Yacht delivered to FATC the executed boat slip leases and a warranty deed for the land, the leases would become long-term and FATC would deliver the trust monies to Aqua Yacht. FATC was not a party to the Lease Agreements but had knowledge of them.

3. Guaranteed Right of Resale (between Wolfe and Aqua Yacht) - This Agreement gave

2

Wolfe the option to require Aqua Yacht to buy back the boat slip lease under certain conditions. FATC was not a party to this agreement and had no knowledge of it.

In September 1990, Aqua Yacht sent to FATC a letter and affidavit, with attachments, purporting to meet the Trust requirements for the distribution of the trust funds to Aqua Yacht. The attachments to the affidavit included a Memorandum and Limited Power of Attorney between Aqua Yacht and the owner of the land on which the marina was located. This document gave Aqua Yacht the power to offer legally valid, ninety-nine-year leases to the slip lessees. It was not a warranty deed, as stated in the Trust. FATC sought legal advice on whether these documents satisfied the Trust requirements for the release of trust funds. FATC's legal counsel gave FATC a verbal opinion that the Memorandum and Limited Power of Attorney was the functional equivalent of a warranty deed and gave Aqua Yacht sufficient power to deliver legally binding, ninety-nine-year leases to lessees of the boat slips. Consequently, FATC released the trust funds to Aqua Yacht.

In December 1993, Wolfe sent Aqua Yacht a letter notifying Aqua Yacht that he wished to exercise his option to sell back his slip, under the Guaranteed Right of Resale. Wolfe learned that Aqua Yacht had sold the marina, and the new owner of the marina refused to honor the resale agreement. Wolfe then sought from FATC a reimbursement of his $100,000 investment and found that the funds had already been distributed to Aqua Yacht. Wolfe sued FATC for violating the Trust.

FATC filed a motion for summary judgment, which was granted by the trial court. The trial court concluded that the Memorandum and Limited Power of Attorney "was the legal and functional equivalent of a warranty deed under Mississippi law," and that the "intent and purpose of the Trust were satisfied" by the Memorandum and Limited Power of Attorney. The trial court reasoned that FATC should not be the guarantor of a contract of which it had no knowledge. It noted that exculpatory clauses in the Trust protected FATC from liability, and that Wolfe had not been disturbed in his use of the slip, had not attempted to sell the slip, and had suffered no legally cognizable damages.

On appeal, Wolfe claims that FATC is liable to him, as a beneficiary of the Trust, for distributing the trust funds in violation of the express and unambiguous conditions of the Trust. In the alternative, he maintains that the Memorandum and Limited Power of Attorney received by FATC was not the functional equivalent of a warranty deed.

3

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* at 210-11. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Id.* Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Id.*

Generally, trust instruments are interpreted in the same manner as contracts, deeds, or wills. *Marks v. Southern Trust Co.*, 203 Tenn. 200, 205, 310 S.W.2d 435, 437-38 (1958). Determining the intent of the settlor is of primary importance. *Id.* at 205, 310 S.W.2d at 438. This intent is normally ascertained by looking to the four corners of the instrument, giving no provision greater emphasis than any another. *Id.* Even so, "[i]t is not necessarily so much the language that is used by the settlor as it is his or her evident intention which governs." *Id.* If the instrument is ambiguous, the intent of the settlor is to be determined not only from the provisions of the trust instrument but also from the surrounding facts and circumstances. *See HMF Trust v. Bankers Trust Co.*, 827 S.W.2d 296, 299 (Tenn. App. 1991).

The Trust stated that the trust funds were to be distributed only when Aqua Yacht acquired a warranty deed to the property on which the slips were located. Other language in the Trust, however, indicates the reason for requiring a warranty deed. In the same sentence as the requirement for a warranty deed, the Trust states that Aqua Yacht must deliver to FATC a warranty deed "whereby Lessor shall have sufficient power in accordance with applicable law to deliver Leases to Lessees." This qualifying language makes it clear that the settlor required a warranty deed *in order to* deliver the required leases. *See Marks*, 203 Tenn. at 205, 310 S.W.2d at 438 (stressing the importance of the settlor's intent "as evidenced by all the provisions of the instrument."). Therefore, the language of the Trust evidences the settlor's intent that Aqua Yacht be required to demonstrate

4

its ability to deliver the leases before FATC could distribute the trust funds. The language of the Trust is unambiguous; consequently, extrinsic evidence is not required. However, the record includes the lease contracts and an affidavit from Benard Blasingame, Aqua Yacht's president and general partner, both of which support the conclusion that the intent in setting up the Trust was to require Aqua Yacht to demonstrate that it could provide the lessees with valid leases, prior to receiving the trust funds. Consequently, so long as the Memorandum and Limited Power of Attorney were sufficient for Aqua Yacht to deliver the required leases, the purpose of the Trust would be fulfilled. *See HMF Trust*, 827 S.W.2d at 299.

Wolfe contends on appeal that the trial court erred in holding that the Memorandum and Limited Power of Attorney was the functional and legal equivalent of a warranty deed under Mississippi law. The Memorandum and Limited Power of Attorney entered into between Benard Blasingame and J. C. Edge, the fee holder of the land where the marina was located, provides that Aqua Yacht shall have:

> the full right and authority to execute on his [Edge's] behalf, his consent to any and all documents reasonably required to transfer or assign to any Aqua Lessee all of Edge's interest in that portion of the Property described in any Aqua Lease to allow the Aqua Lease to be fully effective in accordance with its terms as if Aqua Yacht Harbor Marina Limited Partnership ("the Limited Partnership") was the fee holder, thereby allowing the Limited Partnership to have sufficient power in accordance with applicable law to execute fully effective Aqua Leases with the Aqua Lessees.

The agreement was irrevocable and provided that the leases would be for ninety-nine years.

Because the property in question is situated in Mississippi, the "applicable law" referred to in the Memorandum and Limited Power of Attorney is Mississippi law. Mississippi law allows an attorney-in-fact to convey property in the name of his principal.[1] Miss. Code Ann. § 87-3-3 (1972). In addition, "[a] letter of attorney to transact any business need only express plainly the authority conferred." Miss. Code Ann. § 87-3-7 (1972). Therefore, the Memorandum and Limited Power of Attorney was sufficient to empower Aqua Yacht to deliver ninety-nine-year leases to the lessees.

---

[1]Mississippi Code Annotated § 87-3-3 provides:

> Conveyances of land, or contracts relating thereto, executed by an attorney in fact for his principal, and duly acknowledged or proved, shall have the same force and effect as if executed and acknowledged by the principal; and where a conveyance by an attorney is in execution of letters of attorney, so acknowledged or proved and recorded, it shall pass the interest of the principal though not formally executed in his name.

Miss. Code Ann. § 87-3-3 (1972).

On appeal, Wolfe argues only that a Memorandum and Limited Power of Attorney is not a warranty deed; the record includes no evidence that the Memorandum and Limited Power of Attorney was insufficient to permit Aqua Yacht to deliver the required leases. It is undisputed that Wolfe has enjoyed the right to use his boat slip since his lease was executed, and that no one has challenged his right to the boat slip. Since the Memorandum and Limited Power of Attorney gave Aqua Yacht authority to deliver the leases, it satisfied the condition precedent to the distribution of the trust funds. The trial court is affirmed on this issue.

Wolfe argues that he relied on the Trust to recoup his investment if Aqua Yacht failed to honor the Guaranteed Right of Resale. If he decided to exercise his option and Aqua Yacht could not perform, he could petition FATC as Trustee for the return of his money from the trust funds. If the funds had been distributed to Aqua Yacht, Wolfe could then sue Aqua Yacht and attach the land for satisfaction of his judgment. In this case, however, the trust funds had been distributed to Aqua Yacht and used to pay creditors, and Aqua Yacht did not own the land on which the marina was situated.

The trial court found that Wolfe was improperly attempting to "place FATC in the position of a guarantor or insurer of Aqua as to an agreement between Aqua and Wolfe that was never disclosed to FATC and was not part of the Trust." *See Young v. Phillips*, 170 Tenn. 169, 174, 93 S.W.2d 634, 636 (1936) ("It must be borne in mind that trustees are not insurers . . . ."). Wolfe points to no evidence in the record that FATC had any knowledge of the Guaranteed Right of Resale. So long as FATC fulfilled the purpose of the Trust by requiring Aqua Yacht to demonstrate it could deliver the required leases, FATC cannot be held liable for a contract to which it was not a party and of which it had no knowledge. The trial court is affirmed on this issue as well.

In sum, the language of the Trust demonstrates that the settlor's intent was to require Aqua Yacht to demonstrate its ability to deliver the required leases as a condition precedent to FATC's distribution of trust funds. The Memorandum and Limited Power of Attorney was sufficient under Mississippi law to give Aqua Yacht the ability to deliver the leases. FATC cannot be required to act as guarantor for Wolfe's Guaranteed Right of Resale, an agreement of which it had no knowledge. Our affirmance of the trial court on these issues pretermits the remaining issues raised by Wolfe on appeal.

The decision of the trial court is affirmed. Costs are assessed against Appellant, for which

6

execution may issue if necessary.



                                   _____
_____  **HOLLY KIRBY LILLARD, J.**


**CONCUR:**


_____
**ALAN E. HIGHERS, J.**



_____
**DAVID R. FARMER, J.**