IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2017 Session

## IN RE ELIZABETH BECK HOISINGTON LIVING TRUST

**Appeal from the Probate Court for Shelby County**
**No. PR-004617       Karen D. Webster, Judge**

_____

### No. W2016-02527-COA-R3-CV

_____

Appellant appeals the trial court's determination that settlor's holographic notations on her trust agreement did not operate to modify the original trust. Specifically, the trial court held that settlor neither satisfied the requirements for modification of the trust as set out in the trust agreement, nor manifested a clear intent to amend the trust under Tennessee Code Annotated Section 35-15-602(c)(2)(B). Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, JJ., joined.

Edward Thomas Autry, Memphis, Tennessee, for the appellant, Elizabeth Bozeman Atchley.

John Kevin Walsh and Tricia M.Y. Tweel, Memphis, Tennessee, for the appellee, Carol Gish.

## OPINION

### I. Background

On November 6, 2001, Elizabeth Hoisington ("Settlor") executed her Last Will and Testament and the original version of the Elizabeth Beck Hoisington Living Trust (the "Trust"), which is the subject of this appeal. Under the Trust, Settlor was named and served as the initial Trustee, and Appellee Carol Gish was named as Successor Trustee of Settlor's Trust. At some unknown date, Settlor made handwritten notations on Articles V

and VI of the Trust document, to-wit:

---

## ARTICLE V
### SPECIFIC BEQUESTS AFTER DEATH OF GRANTOR

A.   The Trustee shall distribute the Grantor's diamond ring that was the Grantor's grandmother to the Grantor's daughter, Elizabeth Bozeman Atchley.

B.   The Trustee shall distribute the balance of the Grantor's tangible personal property, including all household furniture and equipment; carpets, rugs, silverware, linens, china and kitchen utensils used in the Grantor's home, and all jewelry, personal clothing, personal automobiles, and articles of personal use, diversion or adornment (excluding any money, stock, bonds or other property of a commercial or investment nature) owned by the Grantor at the

*Descendants of James – Robert Bozeman Bozeman Elizabeth Atchley & Beck Moody*

Grantor's death, outright and in fee ~~to Shirley B. Hoisington Moody~~ outright and in fee. In the event ~~Shirley B. Hoisington Moody~~ shall predecease the Grantor, then such property shall be distributed in the same manner as the Grantor's Residuary Estate.

C.   Twenty-Five Thousand Dollars ($25,000.00) to the Grantor's grandson, James Beck Bozeman, Jr.

D.   Twenty-Five Thousand Dollars ($25,000.00) to the Grantor's granddaughter, Ashley Bozeman.

E.   The Grantor's dogs shall be distributed according to the wishes of Jim St. Hillaire and Susan Anderson.

## ARTICLE VI
### DISTRIBUTION OF RESIDUARY ESTATE AFTER DEATH OF GRANTOR

Upon the death of the Grantor, Elizabeth Beck Hoisington, and after the administration of such Interim Trust and the distributions set forth in Article IV and Article V, the Trustee shall distribute the remainder of the Trust ~~property outright and in fee to Shirley B. Hoisington Moody~~. In the event Shirley B. Hoisington Moody shall predecease the Grantor, then such property shall be distributed in equal shares to Shirley B. Hoisington Moody's descendants per stirpes and the Grantor's deceased son's, James Beck Bozeman's, descendants per stirpes. It is the Grantor's intent to exclude Robert G. Bozeman and Elizabeth Bozeman Atchley from this trust except for the specific bequest of the ring to Elizabeth Bozeman Atchley.

*NO. 1/4 ways Equally*

---

Settlor died on May 11, 2015, leaving the following beneficiaries under her will: (1) Appellant Elizabeth Bozeman Atchley, daughter; (2) Robert G. Bozeman, son; (3) Shirley B. Hoisington Moody, daughter; (4) James Beck Bozeman, Jr., grandson; and (4) Ashley Beck Bozeman, granddaughter. On August 10, 2015, Appellant filed a petition to open Settlor's estate. In September 2015, Shirley Moody provided Carol Gish, the Successor Trustee, with the Trust document that contained Settlor's handwritten notations. On October 7, 2015, Appellant withdrew her petition to open the estate, and

the Successor Trustee filed a petition for declaratory judgment, requesting a determination regarding whether the Settlor's handwritten notations constituted a valid modification of the Trust document. On the same day, Appellant filed a petition for declaratory judgment requesting the trial court to hold that Settlor's handwritten notations constituted a valid modification of the Trust. On April 15, 2016, Ms. Moody filed a Tennessee Rule of Civil Procedure 12.02 motion to dismiss Appellant's petition for declaratory judgment. Prior to the hearing on the petitions and the motion to dismiss, the parties stipulated that: (1) the holographic notations on the Trust document were entirely in Settlor's handwriting; and (2) any challenge to the Settlor's competency, at the time the notations were made, was reserved.

Following a hearing on May 17, 2016, the trial court held that Settlor's holographic notations did not comply with the mandates of the Tennessee Uniform Trust Code ("TUTC"), which was enacted in 2004 to govern trusts in Tennessee. As such, the trial court held that the trust res would be distributed in compliance with the original unannotated Trust document. The trial court denied Ms. Moody's motion to dismiss, although it noted that the motion was rendered moot by its ruling on the holographic notations. Ms. Atchley appeals.

## II. Issues

Appellant raises three issues as stated in her brief:

1.      Whether the Probate Court answered the legal question of whether a handwritten modification to the Trust is an effective amendment to same.
2.      Whether the issue of substantial compliance was ripe for determination by the Probate Court.
3.      Whether the issue of the Grantor's intent was ripe for determination by the Probate Court.

## III. Standard of Review

The trial court's legal conclusions are subject to de novo review, while its findings of fact are afforded a presumption of correctness. Tenn. R. App. P 13(d); *Campbell v. Florida Steel Corp*, 919 S.W.2d 26, 28-29 (Tenn. 1996).

## IV. Analysis

As an initial matter, Appellant contends that the trial court's ultimate ruling that Settlor's handwritten notation did not effectively modify the Trust was premature. In her brief, Appellant specifically argues that she "expected the Probate Court to determine a singular legal question: whether Tennessee law allows a trust to be amended by a holographic modification." As such, Appellant contends that the trial court's ultimate

ruling was premature as it exceeded the scope of the relief sought in Appellee's petition for declaratory judgment. We disagree. Turning to the petition for declaratory judgment, it specifically requests the trial court to "determine that the handwritten modifications to the Trust are binding . . ." and to distribute the Trust res in accordance with the Settlor's handwritten notations. In our view, this prayer for relief was sufficient to put Appellant on notice that the trial court would determine the ultimate issue of how the Trust property should be distributed. As such, the trial court was not limited to the question of whether Tennessee law allows holographic modifications to trusts. Rather, the trial court was asked to determine whether **this** Trust was modified by the Settlor and how the res of **this** Trust should be distributed based on the determination of whether **this** Trust was modified. We now turn to review whether the trial court erred in making its determination.

Section 35-15-602(c) of the TUTC specifically addresses revocation and amendment of revocable trusts. This section provides:

> (c) The settlor may revoke or amend a revocable trust:
> (1) By substantial compliance with a method provided in the terms of the trust; or
> (2) If the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by:
> (A) A later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or
> (B) Any other method manifesting clear and convincing evidence of the settlor's intent.

Tenn. Code Ann. § 35-15-602(c).

The Trust in this case contains a provision regarding revocation and modification of the Trust. Specifically, Article II of the Trust states: "The Grantor may, from time to time, amend this Trust Agreement in any respect or revoke it in whole or in part by an instrument in writing signed by the Grantor and delivered to the Trustee during the Grantor's life." By the plain language of Article II of the Trust, the Settlor could modify the Trust: (1) by an instrument in writing; (2) signed by the Grantor; and (3) delivered to the Trustee during the Grantor's life.

Concerning criterion one, i.e., "by an instrument in writing," the trial court's order states, in relevant part, that "the Settlor made notes on the Trust without preparing a subsequent instrument." On appeal, Appellant contends that Article II of the Trust did not specify that the "instrument in writing" had to be a separate instrument. Rather, Appellant argues that the Settlor's handwritten notations on the original instrument satisfy this criterion. Citing the Black's Law Dictionary definition of "instrument," the

trial court concluded that "[b]ecause an instrument by its legal definition entails a writing, it would logically follow that in order for Settlor to amend her Trust pursuant to Article II, she would necessarily do so by a subsequently prepared written instrument, as opposed to writing on the existing instrument." Concerning criterion two, i.e., "signed by the Grantor," the trial court found that "not one of the parties claimed this element was satisfied, as clearly Settlor's signature does not appear within any portions of the handwritten notations on the Trust. Therefore, with this finding, the Court concludes that this element is not satisfied." On appeal, Appellant argues that the Settlor's signature on the original Trust document satisfies this criterion.

Although the usual and best method for modification of a trust is to do so by separate instrument, we concede that this Trust agreement does not specifically include a qualifying term, e.g.., "subsequent" or "separate," to mandate that the "written instrument" be a separate instrument from the original Trust document. Furthermore, although the better practice is for a Settlor to sign his or her changes to the trust, e.g. by initialing the holographic changes or signing a separate instrument, we acknowledge Appellant's point that the Settlor signed the original Trust agreement. However, even if we concede that there is some question as to whether criteria one and two were met by Settlor's handwritten notations on the original signed Trust agreement, to find that Settlor's notations are valid, Settlor would also have had to comply with criterion three, i.e. "delivered to the Trustee during the Grantor's life." As to this criterion, the trial court found that:

> In the case before this Court, Successor Trustee claims that sometime prior to May 11, 2015 (the Settlor's date of death), she began serving under the Trust. Atchley, on the other hand, alleged that Settlor served as Trustee of the Trust until her death on May 11, 2015. Thus, as argued, the exact date on which Successor Trustee started serving under the Trust is in dispute. This disputed fact, coupled with the fact that the notations are not dated, prevents this Court from determining whether a delivery was made to the appropriate Trustee during Settlor's life. Additionally, both parties agree that Successor Trustee never received the Modified Trust until after Settlor's death, which would present an impossibility in proving delivery in some circumstances. Therefore, this Court finds that because of conflicting arguments about the fact and the lack of evidence, this Court concludes that . . . the element of delivery [to the] Trustee during Settlor's life is not satisfied.

From the record, there is no evidence that Settlor told anyone about the purported modification to the Trust, much less delivered the annotated document to her Successor Trustee.

In Tennessee, a settlor's intent is the gravamen of whether the trust was modified or revoked. Tenn. Code Ann. § 35-6-102(12) ("'Terms of a trust' means the manifestation of the intent of a settlor or decedent with respect to the trust, expressed in a manner that admits of its proof in a judicial proceeding, whether by written or spoken words or by conduct."); *Marks v. Southern Trust Co.*, 310 S.W.2d 435, 438 (Tenn. 1958) (internal citations omitted) ("Of course the important thing in the construction of the trust instrument is to determine the intention of the settlor . . . ."). As the proponent of the modified Trust, Appellant had the burden to show that Settlor intended to modify the Trust either by compliance with the means of modification outlined in the Trust document, or by some other action showing a clear intent to change the original terms of the Trust document. For the reasons discussed above, the question of whether Settlor complied with the method for modification of her Trust, as set out in Article II, is unsettled. As such, Appellant has not met her burden to show that Settlor modified her Trust by complying with the criteria for modification set out in the Trust document.

However, because the Trust does not specify that the method for modification provided in Article II is exclusive, the trial court was correct to consider whether the Settlor's handwritten notations "manifest[ed] clear and convincing evidence of the [S]ettlor's intent" to modify the Trust. Tenn. Code Ann. § 35-15-60(c)(2)(B). Concerning this question, the trial court held that

> the only fact(s) from which to determine the Settlor's intent is from the handwritten notations on the Trust. Given the stipulations, the handwriting on the Trust evidences Settlor's intentions; however, that evidence alone is not clear and convincing to this Court that Settlor intended to amend her Trust.

As discussed in detail above, Settlor did not make her changes in a separate instrument. She did not sign or initial her handwritten changes, and she did not communicate her changes to anyone or deliver a copy of the annotated Trust document to another person. Furthermore, there is no evidence that Settlor performed any other action to evince an intent to change the terms of the original Trust. From the totality of the circumstances, we conclude that the trial court correctly determined that Settlor's holographic notations were not sufficient to manifest a clear intent to modify her Trust. As such, the trial court correctly ordered the Trust res to be distributed in accordance with the original unannotated document.

**V. Conclusion**

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Elizabeth Bozeman Atchley and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE