IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 2, 2025 Session

## IN RE CARL EDWIN OSBORNE, JR. LIVING TRUST

**Appeal from the Probate Court for Shelby County**
**No. PR027086      Kathleen N. Gomes, Judge**

_____

**No. W2024-01768-COA-R3-CV**
_____

JEFFREY USMAN, J., concurring in part and dissenting in part.

The majority opinion offers a thoughtful examination of the issues before this court. I agree fully with the majority that the failure to make an offer of proof results in the waiver of Wife's challenge to exclusion of the testimony of Anthony Bradley, the drafter of the trust. Nevertheless, because I do not understand the trust to operate in the same manner as my colleagues, I respectfully dissent.

Our primary objective in construing a trust is to determine the settlor's intent. *Williams v. Hardison*, 704 S.W.3d 807, 816-17 (Tenn. Ct. App. 2024) (citing *Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 261 (Tenn. 2017)); *Marks v. S. Tr. Co.*, 310 S.W.2d 435, 438 (1958). We determine the settlor's intent by construing the language used throughout the trust document "in much the same way we interpret contracts or wills." *Harvey ex rel. Gladden*, 532 S.W.3d at 261 (citing *Marks*, 310 S.W.2d at 437-38). Accordingly, we must consider the entire trust document and presume every word used has some meaning. *In re Est. of Kowalski*, 574 S.W.3d 872, 877 (Tenn. Ct. App. 2018) (citing *In re Est. of Milam*, 181 S.W.3d 344, 353 (Tenn. Ct. App. 2005)); *Brown v. Brown*, No. W2009-02264-COA-R3-CV, 2011 WL 441266, at *2 ("The entire written agreement must be considered in order to ascertain the parties' intent."). We ascertain the settlor's intention "based upon the usual, natural, and ordinary meaning" of the words used. *Brock v. Brock*, 661 S.W.3d 133, 138 (Tenn. Ct. App. 2022) (quoting *Quebecor Printing Corp. v. L & B Mfg. Co.*, 209 S.W.3d 565, 578 (Tenn. Ct. App. 2006)); *Brown*, 2011 WL 441266, at *2 (stating that a trust document "must be interpreted according to its plain terms as written"); *Williams*, 704 S.W.3d at 816 (explaining that determining the settlor's intent "may be easily done by looking to the four corners of the trust instrument" (quoting *Brock*, 661 S.W.3d at 138)).

We must be careful to determine the settlor's intention "from what he has written and not from what it is supposed he intended." *See Briggs v. Est. of Briggs*, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997); *In re Est. of Link*, 542 S.W.3d 438, 469 (Tenn. Ct. App. 2017) ("[T]estamentary intent must be determined 'from what the testator has written and not from what it is supposed he intended.'" (quoting *In re Est. of Blackburn*, 253 S.W.3d 603, 615 (Tenn. Ct. App. 2007))). Just as "[i]t is not the role of this Court 'to make a different contract than that executed by the parties,'" it is not this Court's role to make a different trust than that executed by the settlor. *Brock*, 661 S.W.3d at 138 (citations omitted); *see Andrews v. Andrews*, 51 Tenn. 4, 11 (1871) ("Our duty is ended when we ascertain what the testator's will, as written, is; what he has omitted to provide for by oversight or through ignorance, we have no power to supply.").

Our "interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." *Brown*, 2011 WL 441266, at *2 (quoting *Graber v. Graber*, No. W2003-01180-COA-R3-CV, 2003 WL 23099689, at *3 (Tenn. Ct. App. Dec.31, 2003)). We should strive to "give effect to every word or clause . . . when possible." *In re Est. of Owen*, No. W2009-01531-COA-R3-CV, 2010 WL 1172078, at *3 (Tenn. Ct. App. Mar. 29, 2010) (citing *Bell v. Shannon*, 367 S.W.2d 761, 766 (1963)); *see Brown*, 2011 WL 441266, at *2. We "should reject no word or clause that can be reasonably reconciled with the remainder" of the trust. *See In re Est. of Owen*, 2010 WL 1172078, at *3 (citing *Bell*, 367 S.W.2d at 766).

The majority suggests that its understanding of the operation of the trust is in tension, but not conflict, with a single provision of the trust. Specifically, the first two sentences of Article Seven of the trust state: "If my wife survives me, my Trustee shall hold and administer the remaining trust property in a separate trust as provided in this Article. The trust will be referred to as the *Marital Trust*."

In my view, this is not the only trust provision in tension with the majority's understanding of how this trust operates. At a critical foundational level, both the trial court's and the majority's readings of the instrument problematically render Article Seven and the Marital Trust that it creates an empty box. Under their respective readings of the trust, neither the trial court nor the majority have been able to identify anything that actually is in the Marital Trust.

Furthermore, while the same practical consequences follow from both the trial court's and the majority's understandings of the operation of the trust, there is a discordance between how the trial court and majority empty the Marital Trust. Addressing the Marital Trust, the trial court observed that Wife "is the Trustee of [the] Osborne Trust, and life beneficiary of the Trust. Separately, she is the beneficiary of the Marital Trust, which includes all remaining property *not* in the Osborne Trust." The trial court reiterated this point in ruling that Wife is "the Trustee and beneficiary of the Marital Trust, which includes all remaining property not in the Osborne Trust." Additionally, the trial court

ruled that beneficiaries identified in the Articles Eight and Nine have "a remainder interest in the Osborne Trust after the death of [Wife]. As such, [Wife] cannot alter or destroy the remainder interest of the beneficiaries."

The latter conclusion conflicts, however, with multiple provisions of Article Seven. For example, Section 7.02 provides that "My trustee shall distribute as much of the principal of the Marital Trust to my wife as she requests in writing. In addition, my Trustee may distribute as much of the principal to my wife as my Trustee determines necessary or advisable for any purpose." Similarly, under Section 7.03, "Upon written request of my wife, my Trustee shall convert any unproductive property held in the Marital Trust to income producing property." Furthermore, Section 7.04 of the trust provides Wife with a "General Power of Appointment." It states as follows: "My wife has the testamentary general power to appoint all or any portion of the principal and undistributed income remaining in the Marital Trust at her death among one or more persons or entities, including the creditors of my wife's estate. My wife has the exclusive right to exercise this general power of appointment." Section 7.04 adds that "I intend to create a testamentary power of appointment that is a general power of appointment as defined in Internal Revenue Code Section 2041."

The trial court, nevertheless, understands the beneficiaries under Articles Eight and Nine to have a remainder interest in the Osborne Trust and understands that Wife could not alter or destroy that interest. The trust itself plainly, however, gives Wife the ability to take "as much of the principal of the Marital Trust" as she requests in writing and allows her to appoint "all or any portion of the principal and undistributed income remaining in the Marital Trust at her death." Plus, under Section 7.01, the Trustee is required to "distribute all of the Marital Trust's net income to my wife at least annually during her lifetime" and adds that "[n]othing contained in this instrument limits the right of my wife to receive the entire net income of the Marital Trust." Additionally, Section 3.09 grants Wife, as successor trustee of the Osborne Trust, "all of the title, rights, powers, and privileges granted to the initial Trustee." These broad powers include, as described in Article 14 of the trust, the power to execute documents; invest in any type of investment; establish any type of bank account; authorize withdrawals from accounts; sell, transfer, exchange for other property, and otherwise dispose of trust property; enter into contracts; sell, convey, purchase, exchange, lease, mortgage, manage, alter, and improve real property; and abandon any trust property, among other things.

The trial court seemingly sought to avoid the conflict between its ruling and Article Seven by viewing the property in the Marital Trust as being comprised of property from outside the Osborne Trust. This understanding, however, stands in direct contradiction with the plain language at the outset of Article Seven: "If my wife survives me, my Trustee shall hold and administer the remaining trust property in a separate trust as provided in this Article. The trust will be referred to as the Marital Trust." In other words, the Marital Trust is not filled with property from outside the Osborne Trust but instead from the

Osborne Trust itself. Thus, the plain language of the trust contradicts the trial court's analysis on this point. It is also unclear to what property the trial court could be referring under its analysis. Schedule A of the Osborne Trust, which identifies the property that has placed into the trust, states the following:

> 7755 Hunters Run Drive, Germantown, Tennessee 38138
>
> This assignment includes all of my real, personal, tangible and intangible property located in the United States, whether separate property or community property and whether acquired before or after the execution of this instrument[.]

Given the breadth of Schedule A,[1] it is difficult to discern what property the trial court could be referencing as property outside the Osborne Trust that would be filling the Marital Trust.

While the majority does not expressly note its variance from the trial court on this point, the majority's reading does not seem to be in accord with that of the trial court. Instead of understanding the Marital Trust as being filled by property from outside the Osborne Trust, the majority concludes that "while a comprehensive list has not been provided on appeal, it appears that additional property was directed into the Trust and passed into the marital trust." From the majority's analysis, it is not clear what property this is or how one would distinguish it from the property that is not in the Marital Trust.

The majority's understanding appears to conflict in at least two respects with the trial court's ruling. As noted above, the trial court viewed the source of the property in the Marital Trust as the "remaining property not in the Osborne Trust," and the trial court understood the Article Eight and Nine beneficiaries to have a remainder interest in all of the Osborne Trust that Wife could not alter or destroy. The majority, however, instead views the Marital Trust as being comprised of an unidentified subset of property in the Osborne Trust that passed into it. If that were the case, presumably Wife would have the variety of rights delineated by Article Seven as to that property including, among others, the right under Section 7.02 to take the entirety of the principal thereof if she so chose and the right under Section 7.04 to appoint the property at her death. However, under the trial court's ruling, Wife was not free to exercise such authority over property unless it was not Osborne Trust property. The majority opinion, again, seems to be in conflict with the trial court on this point.

---

[1] The majority describes the language in Schedule A as generic and non-exhaustive. I agree that it is generic, but I fail to see how this generic language encompassing personal and real property, tangible and intangible property, acquired before or after execution of the trust is not exhaustive.

- 4 -

The majority's understanding of the operation of the trust also appears to be in tension with the language guiding the flow of the trust property across Articles Six, Seven, Eight, and Nine. All the parties agree that Article Six distributes a variety of specific property to Wife, conferring varying interests in that specific property. For example, Article Six of the trust distributes to Wife Husband's automobile and all of his tangible personal property. Wife also receives, under Article Six, a life estate in Epiphany Stock, any real property including buildings and improvements used by Wife as her principal residence, and an annual time share. In Section 6.05, the Residuary Distribution provision of Article Six, the trust provides that "[a]ny property not distributed under this or prior Articles of this instrument will be distributed as provided in the following Articles."

The very next provision of the trust is contained in Article Seven and states the following:

> If my wife survives me, my Trustee shall hold and administer the remaining trust property in a separate trust as provided in this Article. The trust will be referred to as the *Marital Trust*.

> If my wife does not survive me, my Trustee shall administer the remaining trust property as provided in Article Eight.

Under the plain language of the trust, if Wife survives Husband, then "the remaining trust property" is placed in the Marital Trust and administered in accordance with the terms of Article Seven. If Wife predeceases Husband, then the Trustee administers "the remaining trust property" as set forth in Article Eight. Wife did not predecease Husband; accordingly, "the remaining trust property" flowed into the Marital Trust. Under the trial court and majority's readings, however, "the remaining trust property" does not mean "the remaining trust property" after the distribution provided for in Article Six. They reach this conclusion despite that being the most natural reading of the language at the outset of Article Seven.

Moving forward through the trust instrument, Section 7.05 provides for termination of Marital Trust upon Wife's death and provides that, "[i]f my wife has not fully exercised her testamentary general power of appointment over the trust property remaining at her death, my Trustee shall administer the unappointed balance or remainder of the Marital Trust as provided in Article Eight." Article Eight then provides for distribution upon the death of the survivor of Husband and Wife. The distributions under Article Eight are to come "from my remaining trust property not distributed under prior articles of this trust." The residuary distribution under Article Eight adds that "[m]y Trustee shall distribute all remaining trust property not distributed under this or prior Articles of this trust as provided in the Articles that follow." Article Nine then states that, "[a]fter making the specific distributions specified in Article Eight, my Trustee shall administer and distribute my remaining trust property according to the provisions of this Article." Additionally, "My Trustee shall administer and distribute my remaining trust property (not distributed under

- 5 -

prior Articles of this instrument) or other trust property allocated to this Article under the terms of this Article."

The most natural reading of the trust provisions is to understand the flow of trust property as follows. After the death of Husband, if Wife survives him, then under Article Six, certain property is distributed to Wife. Next, after the property is distributed under Article Six, if Wife survives Husband, then "the remaining trust property" flows into Article Seven, where it is administered under the terms thereof which give Wife significant control. After the death of the survivor of Husband and Wife, the "remaining property" flows into Article Eight, and finally the "remaining property" after Article Eight flows into Article Nine.

The majority expresses a view that it does not make sense for Article Six to grant Wife a life estate interest in certain property, only for Wife to end up taking that property in fee simple under the terms of Article Seven. That, however, does not fully acknowledge the legal distinction between Wife and a trust that benefits her. Importantly, although the Marital Trust is directed to hold the remaining property for Wife's benefit, the Marital Trust is legally distinct from Wife herself. *See Desai v. B. G. Naik Tr.*, No. E2024-00873-COA-R3-CV, 2026 WL 907618, at *4 (Tenn. Ct. App. Apr. 2, 2026) ("In general, a trust creates a fiduciary relationship where a settlor devises identifiable property into a separate legal entity and an appointed person, the trustee, holds legal title to property for the benefit of another, the beneficiary, pursuant to obligations imposed by the settlor."); *Elm Children's Educ. Tr. v. Wells Fargo Bank, N.A.*, 468 S.W.3d 529, 532 (Tenn. Ct. App. 2014) ("trusts . . . under Tennessee law are artificial legal entities"). Thus, by its direction that the "remaining trust property" would be held "in a separate trust . . . referred to as the *Marital Trust*," Article Seven of the Osborne Trust has explicitly directed that "remaining trust property" be held by the Marital Trust. Article Seven makes no grant of any property to Wife herself in fee simple. Wife did not receive the property in fee simple; instead, "the remaining property" stayed within the trust. That Wife may elect to exercise powers given to her under the trust, both in her capacity as trustee and under the plain language of Article Seven – which allows her to take as much of the principal as she so chooses – does not change that the property itself remained trust property until after flowing into the Marital Trust, where the trust confers significant authority upon Wife to act for her own benefit.

While this is not a desirable outcome for the beneficiaries under Articles Eight and Nine, the trial court's and majority's readings of the trust in this case appear to empty by judicial decision a Marital Trust that Husband created for Wife. Both the trial court's and majority's readings of the trust are dependent upon a species of property that neither has been able to discern or identify in order to render their reading of Article Seven as anything other than a nullification of the Article. The trial court and majority also read the trust language "the remaining trust property" in a manner that, at least in my view, is not the natural reading of that language. I have difficulty reading "the remaining trust property" language of Article Seven, which follows the distribution in Article Six, as anything other

than the trust property remaining after the distribution in Article Six. I do not doubt that Husband anticipated that Wife would leave significant assets in the trust that would then be distributed as he directed under Articles Eight and Nine to his children, grandchildren, and Mid-South Christian College. I also do not doubt that such an approach may be fairer. The operation of the trust, however, fits together, its provisions reconciled, if one follows the plain language. "[T]he remaining trust property" flows into the Marital Trust if Wife survives Husband and into Article Eight if she does not. The Article Eight distributions are to come "from my remaining trust property not distributed under prior articles of this trust." Then, under Article Nine, the Trustee "shall administer and distribute my remaining trust property (not distributed under prior Articles of this instrument) or other trust property allocated to this Article under the terms of this Article." Articles Eight and Nine could end up empty, but if they are emptied, they are emptied as a result of express language of the trust – not by a judicial decision that requires the existence of property that has not been identified by the majority or the trial court and an unnatural reading of language in the trust.

While the majority's analysis is thoughtful and appealing in many respects, I cannot agree that the majority's reading of the trust is the one that best reconciles its provisions. Accordingly, I respectfully dissent.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE